PEOPLE *v.* TESSMER.

1. CRIMINAL LAW—ANIMALS—MALICIOUS INJURY—STATUTES.
    Malice towards the owner of an animal is not an essential ingredient of the crime prohibited by 3 Comp. Laws, § 11581; respondent was guilty of a violation of the statute for pulling out the tongue of a horse with which he was working and which belonged to a third person, though he was induced to commit the offense because the horse balked, and not because he held any malice towards the owner.

2. SAME—TRIAL—SPECIAL QUESTIONS—JURY—VERDICT.
    Answers to special questions submitted to the jury were not controlling as they would be in civil cases: the jury's right to render a general verdict is not impaired in criminal cases by 3 Comp. Laws, § 10237.

Exceptions before sentence from Washtenaw; Kinne, J. Submitted June 14, 1912. (Docket No. 137.) Decided July 22, 1912.

Carl Tessmer was convicted of wilfully mistreating and maiming a horse belonging to another. Affirmed.

*George J. Burke,* Prosecuting Attorney, for the people.

*Arthur Brown,* for respondent.

STONE, J. The respondent was convicted of a violation of section 11581, 3 Comp. Laws, which reads as follows:

"Every person who shall wilfully and maliciously kill, maim, or disfigure any horses, cattle, or other beasts of another, or shall wilfully and maliciously administer poison to any such horses, cattle or other beasts, or expose any poisonous substance with intent that the same should be taken or swallowed by them, or who shall wilfully and maliciously destroy or injure the personal property of another, by any means not particularly mentioned or described in this chapter, shall be punished by imprison-

ment in the State prison not more than five years, or by fine not exceeding one thousand dollars, and imprisonment in the county jail not more than one year."

The particular offense charged against the respondent was that, at the time and place alleged, he feloniously, maliciously, and wilfully did maim one bay mare, the property of one Silas Elsifor. It was claimed that the act was committed by respondent by putting a strap around the animal's tongue and pulling upon it with both hands and with his full strength, accompanying the act with the remark that he would make the mare draw or he would kill her; and that the animal was so badly injured that she had to be killed. There was no evidence of any malice toward the owner of the horse, and it appeared that respondent ill treated and misused the animal because he became angry at it for refusing to work. The respondent was convicted by the jury of the offense charged, and he has brought the case here on exceptions before sentence.

Counsel for respondent in his brief makes but two contentions raised by the assignments of error, as follows:

"It is submitted, *first*, that the court at the close of the testimony, because there was no evidence of malice toward the owner of the animal, and because it conclusively appeared from the evidence that the respondent committed the acts charged because he became enraged at the animal for refusing to do its work, should have directed a verdict for the defendant; and, *second*, that the court, upon the answers to the two special questions submitted to and answered by the jury, should have granted the motion of defendant, and set aside the general verdict of guilty and entered a verdict of not guilty and ordered the discharge of the respondent."

He further says:

"Assignments 14 to 20, in one form or another, all relate to the question of whether or not malice toward the owner of the animal was an essential ingredient of the crime charged. These assignments will be considered together, and for the reason that we think that a decision upon this point will dispose of the case, we will consider

them first:    (1) *Is malice toward the owner of the animal an essential ingredient of the crime charged ?*   The jury having found that the respondent did not commit the acts charged against him, because of any malice or ill will that he had against Mr. Elsifor, the owner of the animal, it became and was the duty of the circuit judge to have directed a verdict of not guilty, and to have ordered the discharge of the respondent."

The above and foregoing quotations in the language of counsel for respondent disclose the only points that he urges as ground of reversal.   In fact, upon the oral argument he confined himself to the first point.   He makes no claim that the court erred in its charge to the jury, and no error is assigned for this reason except assignment 19, because the court charged that:

"In order to convict the defendant of the crime charged, it is not necessary to establish any express malice against the owner of the horse, Mr. Elsifor.   The defendant may, if you find the circumstances justify it, and the law as I shall otherwise instruct you, the defendant may be convicted of the crime charged even though he entertained no ill feeling or malice against Mr. Elsifor, except what the law may imply from the injury to the property of Mr. Elsifor."

It is urged by counsel for the respondent that the instant case is governed by the case of *People* v. *Minney,* 155 Mich. 534 (119 N. W. 918).   In that case the respondent was charged under the same statute with mutilating a horse by cutting off its tongue.   That the decision in the *Minney Case* may not be misunderstood, it requires a careful examination.   Such examination will disclose that the case was not reversed upon the question whether malice towards the owner of the animal was an essential ingredient of the crime charged, but upon the testimony of a detective of a claimed confession of the commission of a similar offense by respondent, and over four pages of the decision are devoted to the discussion of that question.   Justice Grant distinctly states that:

"It was not shown that respondent had any motive for

the commission of the crime. He had no ill will against Mr. Murphy (the owner), had done some work for him about two years before, and they had had no intercourse since.  *  *  *  The act itself is one of those which, when proven, conclusively establishes the malicious intent if committed by a sane person.  *  *  *  If the evidence established the fact that the respondent committed the deed, he would escape conviction only by a further finding by the jury that he was irresponsible by reason of insanity."

Coming to the discussion of the question involved in the instant case, at the bottom of page 540 of 155 Mich. (119 N. W. 921), attention is called to the error assigned upon the instruction of the court that "it is not necessary that there be malice towards the owner of the animal in a case like this." Justice GRANT then says:

"Malice is an essential ingredient of the crime, and under the clear weight of authority, both in England and the United States, the malice required must be toward the owner or custodian of the animal, and not malice toward the animal. The rule to be deduced from the authorities is that it is not essential to show express malice, but that the malice required may be shown by the character of, and the circumstances surrounding, the crime"—citing authorities.

He then quotes from Mr. East as follows:

"But it does not appear to have been decided that it is necessary to give express evidence of previous malice against the owner in order to bring a case within the act; but, the fact being proved to be done wilfully, which can only proceed from a brutal or malignant mind, it seems a question solely for the consideration of the jury to attribute the real motive to it, to which the transaction itself will most probably furnish a clue."

The opinion then proceeds to state that the question under this statute had not before arisen in this State, but that it had arisen upon two other statutes involving malicious injury to property. Section 9275 of Howell (which was repealed in 1891 [Act No. 23, Pub. Acts 1891]) is then quoted in full. We quote the remainder of the opinion on page 542 of 155 Mich. (119 N. W. 921):

"In *People* v. *Petheram*, 64 Mich. 252 [31 N. W. 188], the defendant was arrested, charged with conspiring and combining with others to wilfully and maliciously obstruct and impede the regular operation and conduct of the business of a manufacturing company. It was there urged that the intent and malice must be aimed at the business obstructed. The court held, however, that the statute did not require malice to be shown toward the owner or his business or property, but that the malice required to be shown was the general malice of the law of crime, and that the acts shown may, as in other cases, furnish the presumption of malice. In a prosecution under section 11584, 3 Comp. Laws, for maliciously injuring a building, the same rule was followed, citing and approving *People* v. *Petheram; People* v. *Burkhardt*, 72 Mich. 172 [40 N. W. 240]. The malice required under the statute now under consideration is not different from the malice required by the statute in the above cases. To sustain the contention on behalf of the respondent in this case would be to overrule those two cases. They have stood unchallenged for many years, and we see no occasion now to overrule them. See, also, *State* v. *Boies* [68 Kan. 167, 74 Pac. 630, 1 Am. & Eng. Ann. Cas. 491], and *Brown* v. *State* [26 Ohio St. 176].

"In view of a new trial we may say that the court should instruct the jury that malice is an essential ingredient of the crime."

An examination of *People* v. *Petheram, supra*, will show that the question was fully discussed and the distinction between malicious mischief and these statutory offenses is pointed out, and Justice MORSE said on pages 265 and 266 of 64 Mich. (31 N. W. 194):

"Malice is best defined, in my opinion, as 'a wicked intent to do an injury'; and it is not necessary that the malice be directed against any particular person; it may be deduced from an intent generally to injure.

"It is a general rule, governing the law of malice, that when a man commits an act, unaccompanied by any circumstances justifying its commission, the law presumes that he has acted advisedly, and with an intent to produce the consequences which have ensued."

In *People* v. *Burkhardt, supra*, the respondent was

charged with a violation of section 11584, 3 Comp. Laws, for maliciously injuring a building of another, and it appeared that there was no reason to believe that respondent had any malice toward the owner of the building; and the trial court was requested to charge that no evidence of malice had been given, and that the jury must acquit. This request was refused. This court held that the case was ruled by *People* v. *Petheram, supra,* and that, from the act itself, there was evidence from which the jury could infer malice, and the conviction was affirmed.

It will thus be seen that in *People* v. *Minney* it was held that the malice required under the statute now under consideration is not different from the malice required by the statutes in the two cases above cited; and that to sustain the contention on behalf of the respondent in that case would be to overrule those two cases, which this court declined to do. We think that the last headnote to the *Minney Case* is misleading, and that this court did not decide the malice toward the owner or custodian of the animal is an essential element of the crime. It is true that Justice GRANT said that the weight of authority, both in England and the United States, was to that effect, yet, by reason of the previous decisions of this court referred to, that rule was not sanctioned, but that it was true that malice is an essential ingredient of the crime, but not necessarily malice toward the owner or custodian. We have carefully considered the cases cited because of the earnest contention of respondent's counsel that an application of the doctrine of the *Minney Case* would result in an acquittal of respondent.

It appears from this record that the respondent, at the time of the offense charged, was a man of mature years; that he was sane; that he did in fact maim the animal; that he maimed it so badly that it was found necessary to shoot it; that he was urged at the time by a person present not to commit the acts that he did commit; that he refused to desist, and declared that, if necessary, he would kill the animal.

The trial court, among other things, charged the jury as follows:

"Before you convict the respondent of the crime with which he is charged in the information, you must find from the evidence that the deed was done wilfully and maliciously, and I charge you that malice is an essential ingredient of the crime, but, as I have already stated to you, malice may be inferred by you from the facts and circumstances surrounding the commission of the offense. If you find from the evidence in this case that the respondent Tessmer had the intent to do the act charged against him in the information unlawfully, it makes no difference whether it be from spite or revenge or hope of gain and profit; malice may be presumed from that conduct. That perhaps is a repetition of what I have already said. It is a general rule governing the law of malice that when a man commits an act unaccompanied by any circumstances excusing or justifying him in such act, the law presumes that he acted with the intent to produce the results that follow his act. The statute upon which this information is based does not require malice to be shown towards the owner or his business or property, but the malice required to be shown is the general malice of the law of crime, and the acts proven and the evidence proven and the evidence produced may furnish that presumption of malice. The acts need not be inspired by any particular wantonness, cruelty, or revenge against the owner of the property to furnish that presumption of malice. On the part of the defendant I give you these:

"'Before you can convict the defendant of the crime charged, you must find from the evidence that by his wrongful act he not only deprived the horse of the use of its tongue, but you must also find from the evidence adduced here upon the trial and beyond a reasonable doubt that, at the time he committed the acts that resulted in the loss of the use of the tongue to the horse, he (the defendant) intended that what he did would have that effect, for, unless the defendant intended by what he did to the horse to deprive it of the use of its tongue, then in that case he is not guilty of the offense charged, and your verdict must be for the defendant.'"

2. The other ground upon which counsel for respondent asks for a reversal is stated as follows:

"The court upon the answers to the two special ques-

tions submitted to, and answered by, the jury should have granted the motion of defendant, and set aside the general verdict of guilty, and entered a verdict of not guilty, and ordered the discharge of the defendant."

Those questions were as follows:

(1) Did the defendant commit the acts charged because of the malice or ill will that he had at the time against Mr. Elsifor, the owner of the horse? Answered: No.

(2) Did the defendant misuse and illtreat the horse because he became angry at it for refusing to do its work? Answered: Yes.

Not only were the questions and answers not controlling of the general verdict, in our view of the case, but this court has held, on at least two occasions, that the statute (section 10237, 3 Comp. Laws), authorizing answers to particular questions to control a general verdict, does not apply to the trial of criminal cases, and that any limitation upon the right of the jury to find a general verdict in criminal cases is against the policy of the law. *People v. Marion,* 29 Mich. 31-40; *People v. Roat,* 117 Mich. 578-582 (76 N. W. 91). The trial court might have refused to submit the questions. Having submitted them, the answers were immaterial and not controlling in any view of the case.

We find no error in the record, the conviction of the respondent is affirmed, and the trial court is directed to proceed to judgment upon the verdict.

MOORE, C. J., and STEERE, McALVAY, BROOKE, OSTRANDER, and BIRD, JJ., concurred. BLAIR J., did not sit.