PEOPLE v FENNELL

Docket No. 241339. Submitted October 15, 2003, at Detroit. Decided January 8, 2004, at 9:00 A.M. Leave to appeal sought.

Stephen R. Fennell was convicted by a jury in the Wayne Circuit Court, Patricia Fresard, J., on nineteen counts of willfully and maliciously torturing or killing animals after he threw a firecracker into a horse barn and nineteen horses died in a fire caused by the firecracker. The defendant appealed, claiming that the trial court erred by refusing to instruct the jury that conviction required proof that he specifically intended to kill or torture the horses, and that there was insufficient evidence of such malice.

The Court of Appeals *held*:

1. The statute under which the defendant was convicted, MCL 750.50b(2), provides in part that a person who willfully, maliciously, and without just cause or excuse kills or tortures an animal is guilty of a felony. In light of the judicial construction given to animal cruelty statutes that preceded MCL 750.50b(2) and the fact that "willful" may be interpreted to describe a purposeful action in the context of a crime, the current statute proscribes a general intent crime, not a specific intent crime. Accordingly, the trial court properly instructed the jury that the defendant could be convicted if the jury found that the defendant killed or tortured an animal or did anything that resulted in such an outcome, knew that his actions were wrong at the time he committed the crime, intended to cause physical or mental harm to an animal, and had no just cause or excuse for his actions.

2. The trial court's instructions properly conveyed the requisite element of malice.

3. There was sufficient evidence to support the defendant's conviction under MCL 750.50b(2). Several witnesses testified that the defendant intentionally threw fireworks at the barn in an attempt to scare the horses, the record shows that nineteen horses were either tortured or killed in the ensuing fire, the defendant presented no justification or excuse for his actions, and the defendant's behavior after throwing the fireworks indicated that he clearly knew that his actions were wrong.

Affirmed.

WHITE, J., dissenting, stated that MCL 750.50b(2) requires for conviction proof that the defendant intended to kill or torture an animal or that the defendant acted with a heedless disregard that the prohibited harm was a plain and strong likelihood. The instructions given in this case erroneously permitted a finding of guilt based on an intent to cause any physical or mental harm to an animal, and made no reference to an intent to cause the prohibited harm or to a heedless disregard of the likelihood of causing such harm. The prosecution, which benefited from the error, has not established that the error was harmless beyond a reasonable doubt. Judge WHITE would reverse and remand for a new trial.

CRIMINAL LAW — ANIMAL CRUELTY — KILLING OR TORTURING — GENERAL INTENT.

A general intent crime is proscribed by the statute that provides that a person who willfully, maliciously and without just cause or excuse kills or tortures an animal is guilty of a felony (MCL 750.50b[2]).

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *Michael E. Duggan*, Prosecuting Attorney, *Timothy A. Baughman*, Chief of Research, Training, and Appeals, and *Olga Agnello*, Principal Attorney, Appeals, for the people.

*Mark J. Kriger* for the defendant.

Before: GAGE, P.J., and WHITE and COOPER, JJ.

COOPER, J. Following a jury trial, defendant Stephen R. Fennell was convicted of nineteen counts of willfully and maliciously torturing or killing animals, MCL 750.50b(2). The trial court sentenced him to three years' probation, with the first year to be served in the county jail. He was acquitted of an additional charge of burning a building. Defendant appeals as of right. We affirm.

In this case we are asked to determine whether the animal torture statute, MCL 750.50b(2), is a specific or general intent crime. There is no case law in Michigan describing the degree of intent required under

this statute and therefore this is an issue of first impression. After reviewing the statute's language and the construction of previous animal cruelty statutes, we conclude that the portion of MCL 750.50b(2) relating to killing or torturing an animal is a general intent crime.[1]

## I. BACKGROUND FACTS

The Grosse Pointe Hunt Club is a private equestrian facility that maintained two stables to house horses. On July 7-8, 2001, one of the stables at the hunt club burned to the ground. Nineteen of the twenty-four horses kept in that stable died as a result of the fire. The fire began when a firecracker exploded inside the stable.

Joseph Evola lived at his parents' home across the street from the hunt club in July 2001. On the night in question, several of Joseph's friends, including defendant, had gathered at the Evola residence. Joseph claimed that defendant possessed a variety of firecrackers that he had purchased in Ohio. Several people in the group recalled overhearing defendant mention something about throwing firecrackers to scare the horses. And Joseph testified that he saw defendant light a firecracker and make an arm movement to throw it toward the hunt club barn. He then observed the firecracker go over the hunt club's fence. The firecracker was described as a "mortar," the kind that goes up into the air and sparks. Gregory

---

[1] We note that the statutory language related to the administering of poison to an animal or exposing an animal to a poisonous substance is not implicated in this case. MCL 750.50b(2). Thus, this opinion does not address whether the conduct proscribed by that language constitutes a specific intent or general intent crime.

Grosfield, another individual in the group, testified that he saw a firework hit the hunt club barn at approximately 4:15 A.M., and begin to spark.

When defendant threw the firework, everyone ran inside. Within minutes, several witnesses inside the Evola residence claimed that they could see a light glow coming from the barn and that it was obvious the barn was on fire. But defendant dissuaded them from calling for help by saying it would look suspicious. Instead, he suggested that they claim that they were asleep when the fire began.

Raymond Neal, the night watchman for the hunt club, was on duty the night in question. He recalled going out to the barn to close the doors because someone was setting off fireworks in the area. As he was closing the doors, Mr. Neal claimed he felt something go past his head and then saw flames going up the barn walls. Although he was able to let some of the horses out, Mr. Neal testified that the fire was too intense for him to rescue the remainder of the horses in the barn. Further inspection of the barn revealed no evidence of electrical or mechanical failure that might have caused the fire.

## II. JURY INSTRUCTIONS

Defendant initially challenges the trial court's refusal to instruct the jury that the prosecution was required to show that defendant specifically intended to kill or torture the horses. We disagree. Claims of instructional error are reviewed de novo on appeal.[2]

---

[2] *People v Kurr*, 253 Mich App 317, 327; 654 NW2d 651 (2002).

It is the function of the trial court to clearly present the case to the jurors and instruct them on the applicable law.[3] Jury instructions must therefore include all the elements of the charged offenses and any material issues, defenses, and theories that are supported by the evidence.[4] Even if the instructions are somewhat imperfect, reversal is not required if the instructions fairly presented the issues to be tried and were sufficient to protect the rights of the defendant.[5]

When interpreting statutes, the primary goal of the reviewing court is to ascertain and facilitate the Legislature's intent.[6] In making this determination, we look to the specific language of the statute.[7] Where the language of the statute is clear, judicial construction is neither necessary nor permitted and the statute must be enforced as written.[8] But when reasonable minds can differ as to the meaning of a statute, judicial construction is appropriate.[9] In such instances, courts must consider the object of the statute, the harm it is designed to remedy, and apply a reasonable construction that best accomplishes the statute's purpose.[10] We note that the Legislature is presumed to be familiar with the rules of statutory construction and to act with knowledge of appellate court statutory interpretations.[11]

---

[3] *People v Katt*, 248 Mich App 282, 310; 639 NW2d 815 (2001).

[4] *People v Canales*, 243 Mich App 571, 574; 624 NW2d 439 (2000).

[5] *People v Aldrich*, 246 Mich App 101, 124; 631 NW2d 67 (2001).

[6] *People v Stone Transport, Inc*, 241 Mich App 49, 50; 613 NW2d 737 (2000).

[7] *People v Borchard-Ruhland*, 460 Mich 278, 284; 597 NW2d 1 (1999).

[8] *Id.*

[9] *People v Warren*, 462 Mich 415, 427; 615 NW2d 691 (2000).

[10] *People v Adair*, 452 Mich 473, 479-480; 550 NW2d 505 (1996).

[11] *People v Higuera*, 244 Mich App 429, 436; 625 NW2d 444 (2001); *People v Ramsdell*, 230 Mich App 386, 392; 585 NW2d 1 (1998).

In the instant case, the trial court instructed the jury with regard to MCL 750.50b(2) as follows:

> To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt. First, that the defendant killed and/or tortured an animal or did anything that resulted in the killing or torturing of an animal. Torture means severe physical or mental pain, and agony or anguish.
>
> Second, that at the time of the commission of the crime, the defendant knew that his actions were wrong and intended to cause physical or mental harm to an animal.
>
> Third, that the defendant had no just cause or excuse for his actions.

Defendant claims that these instructions were erroneous based on the Legislature's use of the term "willfully" in the statute. According to defendant, this terminology indicated that the animal torture statute was a specific intent crime. To determine the intent required in a criminal statute we must look to the mental state set forth in the statute.[12] A crime requiring a particular criminal intent beyond the act done is generally considered a specific intent crime; whereas, a general intent crime merely requires "the intent to perform the physical act itself."[13] Put another way, "specific intent" is often used " ' "to designate a special mental element which is required above and beyond any mental state required with respect to the *actus reus* of the crime." ' "[14]

---

[12] *People v Disimone*, 251 Mich App 605, 610; 650 NW2d 436 (2002).

[13] *Id.*, quoting *People v Davenport*, 230 Mich App 577, 578; 583 NW2d 919 (1998).

[14] *People v Henry*, 239 Mich App 140, 144; 607 NW2d 767 (1999), quoting *People v Langworthy*, 416 Mich 630, 639 n 9; 331 NW2d 171 (1982), quoting LaFave & Scott, Criminal Law, § 28, p 202.

The animal torture statute at issue in this case provides in pertinent part as follows:

> A person who *willfully*, maliciously and without just cause or excuse kills, tortures, mutilates, maims, or disfigures an animal . . . is guilty of a felony, punishable by imprisonment for not more than 4 years, or by a fine of not more than $5,000.00, or community service for not more than 500 hours or any combination of these penalties.[15]

There is no definition of the term "willfully" provided in the statute. Further review of the pertinent statutory language also fails to explicitly state the degree of intent required under this crime. As such, judicial construction is required.

When not specifically defined in the statute, every word should be afforded its plain and ordinary meaning and considered in context.[16] If the legislative intent cannot be determined from the statute itself, courts may refer to dictionary definitions.[17] The term "willful" is defined in Black's Law Dictionary as describing an action that is "[v]oluntary and intentional, but not necessarily malicious."[18]

We further note that while the term "willfully" has been considered in some Michigan cases to denote specific intent,[19] the case law has also indicated that its definition is dependent on the context in which it is used.[20] For instance, common-law arson is considered a general intent crime despite the fact that it is

---

[15] MCL 750.50b(2) (emphasis added).

[16] *People v Wilson*, 257 Mich App 337, 345; 668 NW2d 371 (2003).

[17] *People v Stone*, 463 Mich 558, 563; 621 NW2d 702 (2001).

[18] Black's Law Dictionary (7th ed).

[19] See *Disimone, supra* at 611.

[20] See *People v Nowack*, 462 Mich 392, 406-407; 614 NW2d 78 (2000); *People v Culp*, 108 Mich App 452, 456-457; 310 NW2d 421 (1981).

defined as the willful or voluntary and malicious burning of the dwelling house of another.[21] Our Supreme Court noted that in common-law arson the term "willfully" added nothing to the common-law concept of malice.[22]

We also consider the instant statute's language in light of predecessor statutes and historical developments.[23] For example, under MCL 750.377,[24] it was considered a crime for any person to "wilfully and maliciously kill, maim, or disfigure any horses, cattle, or other beasts of another . . . ." This language is almost identical to that used in MCL 750.50b(2). This is noteworthy because several cases discussing MCL 750.377 have held that it only required a showing of general malice.[25] In determining that malice need not be directed toward the animal or the animal owner, the Court in *People v Tessmer* noted that the requisite malice required was the general malice of the law of crime.[26] Further, in *Culp*, this Court specifically distinguished the statutory crime of willfully and maliciously killing an animal from the specific intent crime of malicious destruction of property.[27]

Given the construction of the animal cruelty statutes preceding MCL 750.50b(2), and the fact that "willful" may be interpreted to describe a purposeful

---

[21] *Nowack, supra* at 402, 406-407.

[22] *Id.* at 406.

[23] See *People v Pigula*, 202 Mich App 87, 90; 507 NW2d 810 (1993).

[24] We note that MCL 750.377 was repealed by 1994 PA 126, effective March 30, 1995.

[25] See *Culp, supra* at 457-458; *People v Tessmer*, 171 Mich 522, 526-527; 137 NW2d 214 (1912); see also 2B Michigan Criminal Law & Procedure, Animals, § 38:6, pp 439-440.

[26] See *Tessmer, supra* at 526-527.

[27] *Culp, supra* at 457-458.

action in the context of a crime, we find that the Legislature enacted the current animal torture statute as a general intent crime. Accordingly, the trial court properly instructed the jury that defendant could be convicted of this crime if he "killed and/or tortured an animal or did anything that resulted in the killing or torturing of an animal."

To the extent defendant alternatively suggests that the trial court improperly instructed the jury on the element of malice, we also disagree. Again, the trial court instructed the jurors that to convict defendant they would have to find that defendant: (1) killed or tortured an animal or did anything that resulted in such an outcome; (2) knew that his actions were wrong at the time he committed this crime; (3) intended to cause physical or mental harm to an animal; and (4) had no just cause or excuse for his actions. Defendant alleges that this instruction was inadequate because malice in this instance required proof of an intent to kill or torture the horses, or intentionally committing an action that defendant knew created a high risk that the horses would be killed or tortured. Conversely, the prosecution argues that the trial court's instruction favored defendant in this regard because it went beyond a general showing of malice and required proof that defendant had a specific intent to cause physical or mental damage to the horses.

Malice has been described an essential element in a conviction for animal cruelty.[28] While defendant claims that the malice required under MCL 750.50b(2)

---

[28] See *Tessmer, supra* at 525; 1 Michigan Law & Practice, Animals, § 11, p 443.

is akin to the malice required in the context of murder, he fails to cite any authority to support his claims. Moreover, in *People v Iehl*,[29] this Court held that the element of malice under MCL 750.377, "requires only that the jury find that defendant 1) committed the act, 2) while knowing it to be wrong, 3) without just cause or excuse, and 4) did it intentionally or 5) with a conscious disregard of known risks to the property of another." Considered as a whole, we find that the trial court's instructions properly conveyed the element of malice to the jury.

### III. SUFFICIENCY OF THE EVIDENCE

Defendant's sufficiency of the evidence argument is largely based on the assumption that MCL 750.50b(2) is a specific intent crime. Indeed, defendant concedes that there was sufficient evidence to support his conviction if the statute only requires a general intent. Nevertheless, we must address defendant's argument that there was insufficient evidence to show that he possessed the requisite malice.

In sufficiency of the evidence claims, this Court reviews the evidence in the light most favorable to the prosecution and determines whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt.[30] Circumstantial evidence and reasonable inferences drawn from it may be sufficient to establish the elements of a crime.[31] Minimal circumstantial evidence is

---

[29] *People v Iehl*, 100 Mich App 277, 280; 299 NW2d 46 (1980), citing CJI 32:1:01.

[30] *People v Hunter*, 466 Mich 1, 6; 643 NW2d 218 (2002).

[31] *People v Bulmer*, 256 Mich App 33, 37; 662 NW2d 117 (2003).

sufficient to prove an actor's state of mind.[32]

Here, several witnesses testified that defendant intentionally threw fireworks at the hunt club stable in an attempt to scare the horses. The record further shows that as a result of his actions, nineteen horses were either tortured or killed in the ensuing fire. Defendant presented no justifications or excuses for his actions. And as evidenced by his behavior after throwing the fireworks, defendant clearly knew his actions were wrong. Accordingly, we find that there was sufficient evidence to support defendant's conviction under MCL 750.50b(2).

Affirmed.

GAGE, P.J., concurred.

WHITE, J. (*dissenting*). I respectfully dissent. The instruction given failed to convey the essential elements of the offense, and defendant is therefore entitled to a new trial. The statute uses the words "willfully" and "maliciously." At a minimum, this phrase requires that a defendant either intend to kill, torture, mutilate, maim, or disfigure an animal, or act with a heedless disregard that the prohibited harm is a plain and strong likelihood. The instruction given permitted the jury to convict defendant on a finding that he threw a firecracker in the direction of the barn, knowing that it was wrong to do so, with the intent to cause any degree of mental harm to the horses, including simply scaring them, without regard to whether defendant intended to kill, torture, mutilate, maim, or disfigure, and without regard to whether defendant intentionally acted in heedless disregard

---

[32] *People v McRunels*, 237 Mich App 168, 181; 603 NW2d 95 (1999).

that the killing, torture, mutilation, maiming, or disfiguring of the horses was a plain and strong likelihood.

The cases relied on by the majority do not lead to a contrary conclusion. In *People v Nowack*, 462 Mich 392; 614 NW2d 78 (2000), the Court discussed common-law arson. The Court stated that common-law arson is a general intent crime:

> Common-law arson is a general intent crime. "[T]he enduring common law definition of the mental element of" arson is that the burning be done "maliciously and voluntarily." Poulos, *The metamorphosis of the law of arson,* 51 Mo L R 295, 319 (1986). A malicious burning occurs when the defendant "either intentionally or wantonly burns property without justification or excuse." *Id.*, p 403. Wanton arson "required an intentional act which created a very high risk of burning a dwelling house, which risk was known by the actor and disregarded when the actor performed the risk taking act." *Id.*, p 408 "[T]he word 'willfully' adds nothing to the common law concept of malice . . . ." *Id.*, p 404.
>
> The common law defines arson as the performance of any act resulting in the burning of a dwelling house that was done with malice. Perkins, Criminal Law (2d ed), ch 3, § 2, pp 216-219. *Common-law malice requires either: 1) an actual intent to commit the actus reus, or 2) an intent to act with a heedless disregard that the prohibited harm is a plain and strong likelihood. Id.*, ch 7, § 4, pp 766-768, and n 25. [462 Mich 406-407. Emphasis added.]

Although *Nowack* declares that common-law arson is a general intent crime, and that within the definition of that offense the concept of "willfully" adds nothing to the common-law concept of "malice," the case nevertheless requires either an intent to set fire or an intent to act with a heedless disregard that the prohibited harm is a plain and strong likelihood. Here, the instruction given required neither intent.

In *People v Tessmer*, 171 Mich 522; 137 NW 214 (1912), the issue was whether the predecessor to MCL 750.377 required proof that the defendant acted with malice toward the owner of the animal. Tessmer had put a strap around a horse's tongue and had pulled on it with his full strength, while remarking that he would make the mare draw or he would kill her. The horse was so badly injured that she had to be killed. There was no evidence of any malice toward the owner, and it appeared that the defendant had become angry at the mare for refusing to work. The *Tessmer* Court, *id.* at 524-527, quoted from *People v Minney*, 155 Mich 534; 119 NW 918 (1909), in which the defendant was charged under the same statute for mutilating a horse by cutting out its tongue:

> "It was not shown that respondent had any motive for the commission of the crime. He had no ill will against Mr. Murphy (the owner), had done some work for him about two years before, and they had had no intercourse since. * * * *The act itself is one of those which, when proven, conclusively establishes the malicious intent if committed by a sane person.* * * * If the evidence established the fact that the respondent committed the deed, he would escape conviction only by a further finding by the jury that he was irresponsible by reason of insanity."
>
> Coming to the discussion of the question involved in the instant case, at the bottom of page 540 of 155 Mich. (119 N.W. 921), attention is called to the error assigned upon the instruction of the court that "it is not necessary that there be malice towards the owner of the animal in a case like this." Justice Grant then says:
>
> "Malice is an essential ingredient of the crime, and under the clear weight of authority, both in England and the United States, the *malice* required must be toward the owner or custodian of the animal, and not malice toward the animal. The rule to be deduced from the authorities is

that it is not essential to show express malice, but that the malice required may be shown by the character of, and the circumstances surrounding, the crime"—citing authorities.

He then quotes from Mr. East as follows:

"But it does not appear to have been decided that it is necessary to give express evidence of previous malice against the owner in order to bring a case within the act; but, *the fact being proved to be done wilfully, which can only proceed from a brutal or malignant mind, it seems a question solely for the consideration of the jury to attribute the real motive to it, to which the transaction itself will most probably furnish a clue.*"

The opinion then *proceeds* to state that the question under this statute had not before arisen in this State, but that it had arisen upon two other statutes involving malicious injury to property. Section 9275 of Howell (which was repealed in 1891 [Act No. 23, Pub. Acts 1891]) is then quoted in full. . . .

\*        \*        \*

An examination of *People v. Petheram* [64 Mich 252; 31 NW 188 (1887)] will show that the question was fully discussed and the distinction between malicious mischief and these statutory offenses is pointed out, and Justice Morse said on pages 265 and 266 of 64 Mich. (31 N.W. 194):

"*Malice is best defined, in my opinion, as 'a wicked intent to do an injury'; and it is not necessary that the malice be directed against any particular person; it may be deduced from an intent generally to injure.*

"It is a general rule, governing the law of malice, that when a man commits an act, unaccompanied by any circumstances justifying its *commission*, the law presumes that he has acted advisedly, and with an intent to produce the consequences which have ensued."

\*        \*        \*

It appears from this record that the respondent, at the time of the offense charged, was a man of mature years; that he was sane; that he did in fact maim the animal; that

he maimed it so badly that it was found necessary to shoot it; that he was urged at the time by a person present not to commit the acts that he did commit; that he refused to desist, and declared that, if necessary, he would kill the animal. [Emphasis added.]

I do not find *Tessmer* inconsistent with requiring either an intent to kill, torture, mutilate, maim, or disfigure, or an act done intentionally in heedless disregard that the prohibited harm is a plain and strong likelihood. In *Tessmer*, it was clear that the defendant intentionally mutilated or maimed the horse, or that he pulled on her tongue with a heedless disregard that it was likely that he would mutilate or maim her.[1] The only issue for the Court was whether the defendant was entitled to a directed verdict of acquittal on the basis that he bore no malice toward the horse's owner.

In *People v Iehl*, 100 Mich App 277; 299 NW2d 46 (1980), the defendant, who apparently shot and killed a dog, claimed error on the basis that the court instructed the jurors that they could find the defendant guilty if they found that he acted with malice towards either the owner or the dog, when they should have been required to find that the defendant acted with malice toward the dog. The Court determined that the jury need not find that a defendant acted with malice toward either the owner or the animal, but only that he committed the act, knowing it to be wrong, without just cause or excuse, and did

---

[1] This is evident from the Court's statements, quoted above. Further, the actual instruction to the jury required a finding of intent to deprive the horse of the use of its tongue.

it intentionally *or with a conscious disregard of known risks to the property of another.*[2]

When a criminal statute uses the words "willfully and maliciously" more is required to convict than a finding that the defendant intended to do the act that resulted in the prohibited harm, although the harm may have been unintended and unanticipated. No case has been cited that allows a conviction under a willful and malicious statute on a mere showing that the defendant intentionally performed an act that resulted in the prohibited harm, even knowing the act to be in some sense wrong, without regard to the defendant's state of mind (intending or in conscious disregard) in relation to the prohibited harm. When the cases state the requirement that the act be done intentionally or with a conscious disregard of the known risk, *Iehl, supra* at 280, or with an actual intent to commit the actus reus, or with an intent to act with a heedless disregard that the prohibited harm is a plain and strong likelihood, *Nowack, supra* at 407, the act that must be done intentionally is the act prohibited by the statute, i.e., the killing, torturing, mutilating, maiming, or disfiguring of the animal,

---

[2] *People v McKnight*, 102 Mich App 581; 302 NW2d 241 (1980), a case not addressed by the majority but involving the statute, also supports that the instant instruction was deficient. In *McKnight*, the defendant, who had kicked a dog to death, argued that his guilty plea should be reversed because there was insufficient factual basis to support a finding that he had the requisite willful and malicious intent to kill the dog. After stating the rule that a factual basis for accepting a plea exists if an inculpatory inference can reasonably be drawn from the facts admitted, the Court concluded:

> A jury could properly infer willful and malicious intent to kill, even where defendant disclaims such intent, from evidence that he intentionally set in motion a force likely to cause death or grievous bodily harm—here kicking the dog. [*Id.* at 585.]

not some intermediate act that may have led to that result. There must be some intent to cause the prohibited harm, or a heedless disregard that the likely consequence or known risk of the intentional act is to result in the prohibited harm. *Nowack, supra.*[3]

Here, it was not enough that the jury was required to find that defendant killed or tortured an animal or did anything that resulted in the killing or torturing of an animal; and that at the time of the commission of the crime, defendant knew that his actions were wrong and intended to cause physical or mental harm to an animal. The instruction permitted a finding of guilt based on an intent to cause any physical or mental harm to an animal, and made no reference to an intent to cause the prohibited harm or to a conscious or heedless disregard of the likelihood of causing such harm.

The instruction given in the instant case omitted an essential element of the offense charged. An instructional error omitting an element of a crime is error of constitutional magnitude. *People v Carines*, 460 Mich 750, 761; 597 NW2d 130 (1999), citing *United States v Gaudin*, 515 US 506, 510; 115 S Ct 2310; 132 L Ed 2d 444 (1995). Because defendant preserved this error below, this Court must determine whether the benefi-

---

[3] In both *Tessmer* and *Iehl*, the defendants were alleged to have committed acts that, if done intentionally, necessarily established that they willfully and maliciously killed or maimed the animals. In *Tessmer*, the defendant was accused of pulling on the horse's tongue until she lost the use of it. If this act was done intentionally, then perforce, the maiming was intentional or done with heedless disregard of the likelihood of maiming. In *Iehl*, the defendant was accused of shooting a dog. If this was done intentionally, then perforce, the killing or torture of the dog was intentional or done with heedless disregard of the likelihood of causing the killing or torture.

ciary of the error has established that it is harmless beyond a reasonable doubt. *Carines, supra* at 774.

The prosecution has not established that the error was harmless beyond a reasonable doubt. The jury could have found defendant guilty on a finding that he did not intend to cause any physical harm at all to the horses, that setting the barn on fire, with the attendant result of the horses being killed or tortured, was neither intended nor a plain and likely result or a known risk of throwing the firecracker, and that defendant's only intent was to scare the horses. Because the instruction given required neither an intent to kill, torture, mutilate, maim, or disfigure, nor an intentional act in heedless disregard that the killing, torturing, mutilation, maiming, or disfiguring of an animal was the plain and likely result, or in conscious disregard of the known risk that such harm would occur,[4] defendant's criminal conviction did not

---

[4] I note that the prosecutor, in fact, made this argument:

Well, the instruction tells you, either he killed or tortured and/or did anything that resulted in the killing and/or torture. And it goes on to tell you, torture means severe physical or mental pain, agony or anguish. That's the act that results here. Obviously, these horses were severely physically and mentally in pain, agony or anguish as a result of that fire.

But look it [sic], and that's the part that I highlighted here. Second, that at the time of the commission of the crime, the defendant knew that his actions were wrong, and intended to cause physical or mental harm to the animal. This is the intent that's required in doing these acts up here. Intended to cause physical or mental harm to an animal. *You notice that the same words are not repeated down here. It don't* [sic] *say severe physical or mental pain, agony or anguish. It says cause physical or mental harm.*

*Did the defendant intend to cause, without using the words severe anguish and so forth. Did he mean to cause physical or mental harm to an animal? That's exactly what he meant to do. He said it. He said he wanted to scare the horses.* [Emphasis added.]

rest on a jury determination that he was guilty beyond a reasonable doubt of every element of the crime charged. Defendant is therefore entitled to a new trial. *Carines, supra.*

I would reverse.