# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

TIWAUN MAURICE CALLOWAY,

      Defendant-Appellant.

UNPUBLISHED
March 22, 2016

Nos. 323776; 325524
Wayne Circuit Court
LC No. 13-009551-FC

Before: GLEICHER, P.J., and JANSEN and SHAPIRO, JJ.

PER CURIAM.

In Docket No. 323776, defendant appeals by delayed leave granted[1] his jury trial conviction of second-degree murder, MCL 750.317. In Docket No. 325524, defendant appeals as of right from the reissued judgment of sentence pertaining to the same conviction. Defendant was sentenced to 20 to 50 years' imprisonment for the second-degree murder conviction. We affirm defendant's conviction, but vacate his sentence and remand for resentencing in accordance with this opinion.

## I. INFORMANT TESTIMONY

Defendant first contends that the trial court erred in rejecting his request for a special instruction regarding the testimony of Jeremy Holliman as a jailhouse informant because it involved a special category of credibility determinations. We disagree.

Claims of instructional error are reviewed de novo. *People v Fennell*, 260 Mich App 261, 264; 677 NW2d 66 (2004). " 'But a trial court's determination whether a jury instruction is applicable to the facts of the case is reviewed for an abuse of discretion.' " *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006) (citation omitted).

" 'Jury instructions must include all the elements of the charged offense and must not exclude material issues, defenses, and theories if the evidence supports them.' " *People v Clark*,

---

[1] See *People v Calloway*, unpublished order of the Court of Appeals, entered December 19, 2014 (Docket No. 323776).

-1-

274 Mich App 248, 255; 732 NW2d 605 (2007) (citation omitted). " 'Even if the instructions are imperfect, there is no error if they fairly represented the issues to be tried and sufficiently protected the defendant's rights.' " *Id.* at 255-256 (citation omitted).

In support of the special instruction, defendant's counsel indicated the absence of a current standard instruction akin to that available in the federal court system and suggested the use, with modification, of the standard jury instruction pertaining to accomplice testimony. The prosecutor objected premised on the factual circumstances pertaining to Holliman's testimony. Noting a Supreme Court administrative order regarding use of the standard jury instructions in addition to its perceived adequacy of the standard instruction pertaining to witness testimony, the trial court rejected defense counsel's request for a special or additional instruction, but permitted her to "argue all those things to the jury in your closing."

When instructing the jury, the trial court used the standard criminal jury instruction pertaining to evaluating witness credibility, which included direction to the jurors to evaluate a witness's bias or reasons to be untruthful, in addition to the receipt of any promises, threats, suggestions, and influences that may have affected the veracity of the witness. In closing arguments, defense counsel did caution the jury to "[b]e careful with Mr. Holliman's testimony," emphasizing the questionable and selfish motives underlying Holliman's trial testimony and the second-hand nature of the information he purveyed.

The trial court's provision of the standard jury instruction, CJI2d 3.6, on the issue of witness credibility was sufficient to protect defendant's rights. The content of the instruction conveyed to the jurors their ability to accept or reject any witness testimony and to question the motivations or reasons underlying the testimony. Based on the cross-examination of Holliman, the jury was fully aware of his criminal history, his incarceration, his sentence, and the reason why he initiated contact with the prosecutor's office in this matter. The jurors also had the opportunity to assess Holliman's demeanor while testifying. Defense counsel was able to raise credibility concerns regarding Holliman's testimony in closing arguments. Because, on the whole, the jury instructions fairly provided a framework for the jury's assessment of witness credibility issues, and jurors are presumed to follow their instructions, defendant has failed to establish error regarding the trial court's decision to not provide an additional instruction. See *People v Roscoe*, 303 Mich App 633, 646; 846 NW2d 402 (2014) (noting that jurors are presumed to follow the jury instructions); *Clark*, 274 Mich App at 255-256.

## II. MISSING WITNESS JURY INSTRUCTION

Next, defendant contends that the trial court erred in finding that the prosecutor engaged in due diligence in trying to produce two witnesses, Gregory Branch, Sr. and Tianna Calloway, for trial and in refusing to provide the jury instruction on missing witnesses. We disagree.

We review a trial court's determination of due diligence and the appropriateness of a missing witness instruction for an abuse of discretion. *People v Eccles*, 260 Mich App 379, 389; 677 NW2d 76 (2004). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *People v Lyon*, 310 Mich App 515, 517; 872 NW2d 245 (2015).

In accordance with MCL 767.40a, the prosecution is required to notify a defendant of all known res gestae witnesses and all witnesses that the prosecution intends to produce at trial. *People v Cook*, 266 Mich App 290, 295; 702 NW2d 613 (2005). A res gestae witness is defined as someone who has "witness[ed] some event in the continuum of the criminal transaction and [whose] testimony would . . . have aided in developing a full disclosure of the facts at trial." *People v Long*, 246 Mich App 582, 585; 633 NW2d 843 (2001). "A prosecutor who endorses a witness under MCL 767.40a(3) is obliged to exercise due diligence to produce that witness at trial." *Eccles*, 260 Mich App at 388. "Due diligence" has been defined as the attempt to do everything reasonable to obtain the presence of a witness, not everything possible. *Id.* at 391. "The test is one of reasonableness and depends on the facts and circumstances of each case, i.e., whether diligent good-faith efforts were made to procure the testimony, not whether more stringent efforts would have produced it." *People v Bean*, 457 Mich 677, 684; 580 NW2d 390 (1998). If the trial court determines that there was a lack of due diligence, then it is appropriate to provide the jury with the "missing witness" instruction, M Crim JI 5.12, where the jury is instructed that it may infer that the testimony of the missing witness would have been unfavorable to the prosecution's case. See *Eccles*, 260 Mich App at 388.

The officer in charge of the case, Richard Houser, testified with regard to his efforts to procure both witnesses for trial. Specifically, with regard to the efforts expended to secure Tianna for trial, officers went to six separate addresses in search of the witness. Houser went to the workplace of Tianna's father and spoke with him to try to determine Tianna's whereabouts. Officers procured a search warrant for Tianna's address. Police left a contact number with her father. The police also attempted to contact Tianna at her mailing address "several times," and checked hospitals, checked the morgue, contacted the United States Postal Inspector, and tried to determine whether she was receiving any social services, without success. Even when Tianna provided a statement to the police before she was unable to be located, she was not fully cooperative with police. Relatives of Tianna opined to Houser that she had left the area with Damian Jones (Damian), the shooter in the incident.

With reference to attempts to secure the presence of Branch at trial, Houser reported going to Branch's home on several occasions, at varying times, only to be met by Branch's son, who indicated that his father was not a "snitch" and would refuse to testify. Houser also attempted to contact Branch by telephone, without success. Houser acknowledged that he did not contact local hospitals, the morgue, or various utilities in an attempt to locate Branch. It was noted that Branch's family was uncooperative with attempts by police to contact this witness.

Defense counsel questioned the timing of efforts by police, suggesting they did not expend efforts for a sufficient duration before trial. However, the trial court found due diligence in attempting to secure contact with the witnesses, noting that the witnesses appeared to be purposely avoiding and trying to hide from police. The trial court discounted the significance of the "timing" of the efforts, indicating that Houser's testimony demonstrated that he was trying to make contact with the witnesses "for months," thereby meeting the requirements for due diligence.

Based on the efforts outlined by Houser in trying to procure the two witnesses to testify, the trial court did not err in finding due diligence. Close to the time of the events comprising this crime, police did secure statements from the individuals. It is important to recall that while the

prosecution and the police might have sought additional avenues to try to locate these individuals, "due diligence" requires only the attempt to do everything that is reasonable to obtain their presence and not everything possible. See *Eccles*, 260 Mich App at 391. This appears to be especially true with regard to Tianna, who was believed to have fled the area with Damian to avoid his arrest. There also appeared to be no need to check locations such as hospitals and other such facilities with regard to Branch given the clear indication by this individual's family members that he was purposely refusing to cooperate and making himself unavailable.

Since the trial court correctly found due diligence in trying to procure the witnesses for trial, defendant was not entitled to a missing witness instruction, and the trial court did not err in failing to provide the requested instruction. See *Eccles*, 260 Mich App at 388-389. Even if the prosecutor had failed to fulfill the duty of due diligence, the lack of a missing witness instruction was not outcome determinative. See *People v McKinney*, 258 Mich App 157, 163; 670 NW2d 254 (2003) ("Reversal for failure to provide a jury instruction is unwarranted unless it appears that it is more probable than not that the error was outcome determinative."). Tianna was not a witness to the actual events. Her only testimony would have pertained to the loss of her cellular telephone, which was not disputed. There is no suggestion that she actually observed the person that took or found her cell phone. Hence, her presence at trial, at best, would have provided no particular benefit or detriment to defendant given the concurrence of the testimony elicited that this matter evolved from the loss of Tianna's cellular telephone and escalated into a homicide. In contrast, it appears that Branch did witness the events based on his presence in the neighborhood. While defendant contends that Branch's testimony would have been beneficial to him and would have resolved conflicts in the testimony of other witnesses regarding the presence or absence of a gun by the victim, he fails on appeal to provide any offer of proof or delineate in any meaningful manner the testimony he asserts would have been elicited at trial from this witness.

> "It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." [*People v Waclawski*, 286 Mich App 634, 679; 780 NW2d 321 (2009) (citation omitted).]

Defendant's argument is cursory and conclusive regarding the content or substance of Branch's possible testimony. See *id*. On appeal, the prosecution asserts that Branch's testimony would have actually been detrimental to defendant as Branch testified under an investigative subpoena that defendant, at one point in the confrontation with the victim, verbally indicated to Damian to shoot the victim after initially instructing Damian not to shoot the victim. In addition, Branch did not indicate that he observed the victim with a handgun, but merely assumed possession by the victim based on having learned that a gun was retrieved from the scene. The transcripts proffered by the prosecution in conjunction with its appellate brief are not a part of the lower court record or the trial transcripts and, thus, comprise an improper expansion of the record. See MCR 7.210(A)(1); *Eccles*, 260 Mich App at 384 n 4. Hence, there is nothing to support or suggest that the failure to provide either the testimony of these witnesses or the missing witness instruction was detrimental to defendant's case or the outcome of trial, particularly given the degree of concurrence elicited from the testimony of Sherry Hart and Holliman, as well as

-4-

defendant's recorded police interview regarding the germane facts pertaining to how these events transpired. See *McKinney*, 258 Mich App at 163.

## III. JUDICIAL FACT-FINDING

Defendant asserts a Sixth Amendment challenge to his sentence by contending that the trial court engaged in judicial fact-finding in scoring offense variables (OVs) 5 and 19. We agree that OV 5 and OV 19 were scored using judge-found facts under the mandatory sentencing guidelines in violation of defendant's Sixth Amendment rights.

Because defendant did not object at sentencing to the scoring of the OVs based on *Alleyne v United States*, 570 US ___; 133 S Ct 2151; 186 L Ed 2d 314 (2013), our review of the issue is for plain error affecting substantial rights. *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). Specifically:

> To establish entitlement to relief under plain-error review, the defendant must establish that an error occurred, that the error was plain, i.e., clear or obvious, and that the plain error affected substantial rights. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings. Finally, even if a defendant satisfies those three requirements, an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted only when the error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings independently of the defendant's innocence. [*Id.* at 392-393 (citations omitted).]

Our Supreme Court recently held that Michigan's sentencing scheme is unconstitutional to the extent that it compels an increase in a defendant's mandatory minimum sentence using facts not admitted to by the defendant or found by a jury beyond a reasonable doubt. See *Lockridge*, 498 Mich at 388-389, 392. The Court concluded "that the rule from *Apprendi v New Jersey*, 530 US 466; 120 S Ct 2348; 147 L Ed 2d 435 (2000), as extended by *Alleyne v United States*, 570 US ___; 133 S Ct 2151; 186 L Ed 2d 314 (2013), applies to Michigan's sentencing guidelines and renders them constitutionally deficient." *Id*. at 364.

> To remedy the constitutional violation, [the Court severed] MCL 769.34(2) to the extent that it makes the sentencing guidelines range as scored on the basis of facts beyond those admitted by the defendant or found by the jury beyond a reasonable doubt mandatory. [The Court] also [struck] down the requirement in MCL 769.34(3) that a sentencing court that departs from the applicable guidelines range must articulate a substantial and compelling reason for that departure. [*Id*. at 364-365.]

The Court concluded "that a guidelines minimum sentence range calculated in violation of *Apprendi* and *Alleyne* is advisory only and that sentences that depart from that threshold are to be reviewed by appellate courts for reasonableness." *Id*. at 365. The Court explained that when the facts admitted to by the defendant and found by the jury verdict "were sufficient to assess the minimum number of OV points necessary for the defendant's score to fall in the cell of the

sentencing grid under which he or she was sentenced," there is no plain error. *Id*. at 394-395. However, if the "facts admitted by a defendant or found by the jury verdict were insufficient to assess the minimum number of OV points necessary for the defendant's score to fall in the cell of the sentencing grid under which he or she was sentenced," and the sentence was not the result of an upward departure, then the defendant can establish plain error and the issue warrants a remand to the trial court for further inquiry. *Id*. at 395.

Here, defendant did not receive a departure sentence. Accordingly, the issue whether remand is proper depends on whether "defendant's minimum sentence was established by application of the sentencing guidelines in a manner that violated the Sixth Amendment." See *Lockridge*, 498 Mich at 397. A trial court is to assess 15 points for OV 5 if "[s]erious psychological injury requiring professional treatment occurred to a victim's family." MCL 777.35(1)(a). Zero points are to be attributed to OV 5 if "[n]o serious psychological injury requiring professional treatment occurred to a victim's family." MCL 777.35(1)(b). The fact that the victim's family suffered from serious psychological injury requiring professional treatment was not found by the jury beyond a reasonable doubt or admitted to by defendant. Therefore, because the trial court's scoring of OV 5 was not premised on facts found by the jury or admitted by defendant, the assessment of points for this variable was based on judicial fact-finding. See *Lockridge*, 498 Mich at 391.

With regard to OV 19, 10 points are properly assessed when "[t]he offender otherwise interfered with or attempted to interfere with the administration of justice." MCL 777.49(c). Although the jury was arguably presented with videotape evidence indicating that defendant was not forthright with the police, it did not find the facts necessary to support the scoring of OV 19 beyond a reasonable doubt because they were not part of the elements of second-degree murder. In addition, although defense counsel acknowledged that the video played for the jury provided "some indication that [defendant] was not forthright with the police," defendant did not unequivocally admit to lying to the police. Thus, we conclude that the assessment of points for OV 19 was also based on judicial fact-finding. See *Lockridge*, 498 Mich at 391.

Defendant's original prior record variable (PRV) score was nine, placing him at PRV level B; this score remained unchanged. See MCL 777.61. Defendant's final OV score was 105, placing defendant at OV level III. See *id*. The scoring of the PRVs and OVs resulted in defendant's sentencing guidelines range being increased to 180 to 300 months or life. Without the assessment of 15 points for OV 5 and 10 points for OV 19, defendant would have received 80 OV points, placing him at OV level II. See *id*. The sentencing guidelines range would have been 162 to 270 months' imprisonment. Thus, the judicial fact-finding raised the sentencing guidelines range in this case. Accordingly, if this were the only sentencing issue in this case, we would remand for a *Crosby*[2] remand, which is the remedy outlined in *Lockridge*. See *Lockridge*, 498 Mich at 395-397. However, the trial court committed an additional error in sentencing defendant, which requires resentencing.

---

[2] *United States v Crosby*, 397 F3d 103 (CA 2, 2005).

IV. SCORING OF OFFENSE VARIABLES

Defendant contends that the trial court erred in assessing points for OVs 5 and 19. We agree that the court erred in assessing points for OV 5, but disagree that the court erred in assessing points for OV 19.

"Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013) (citations omitted). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id*.[3]

As discussed above, a trial court is to assess 15 points for OV 5 if "[s]erious psychological injury requiring professional treatment occurred to a victim's family." MCL 777.35(1)(a). Zero points are to be attributed to OV 5 if "[n]o serious psychological injury requiring professional treatment occurred to a victim's family." MCL 777.35(1)(b). Whether treatment has been sought or secured is not determinative. MCL 777.35(2). The presentence investigation report (PSIR) reflects that the victim's stepfather was interviewed. He stated that the victim's mother was "having a very hard time dealing with this situation," and explained that the "incident has had a tremendous, traumatic effect on him and his family." He explained that the incident "will change them for the rest of their lives." The victim's stepfather expressed similar thoughts when he made a statement at sentencing. However, there is no evidence indicating that any member of the victim's family intended to receive professional treatment in relation to the incident or required professional treatment because of the incident. See *People v Portellos*, 298 Mich App 431, 449; 827 NW2d 725 (2012) (affirming the trial court's refusal to assess points for OV 5 when there was no evidence that members of the victim's family intended to receive treatment). Therefore, the trial court erred in assessing 15 points, rather than zero points, for OV 5. See *id*.

OV 19 pertains to threats to the security of a penal institution, an interference with the administration of justice, or the rendering of emergency services, and is governed by MCL 777.49. Ten points are properly assessed for OV 19 when "[t]he offender otherwise interfered with or attempted to interfere with the administration of justice." MCL 777.49(c). "[T]he plain and ordinary meaning of 'interfere with the administration of justice' for purposes of OV 19 is to oppose so as to hamper, hinder, or obstruct the act or process of administering judgment of individuals or causes by judicial process." *People v Hershey*, 303 Mich App 330, 343; 844 NW2d 127 (2013). "It encompasses more than just the actual judicial process and can include [c]onduct that occurs before criminal charges are filed, acts that constitute obstruction of justice, and acts that do not necessarily rise to the level of a chargeable offense . . . ." *Id*. (quotation

---

[3] We note that the Michigan Supreme Court's decision in *Lockridge* did "nothing to undercut the requirement that the highest number of points possible must be assessed for all OVs, whether using judge-found facts or not." *Lockridge*, 498 Mich at 392 n 28. Thus, because the scoring of the offense variables remains relevant post-*Lockridge*, we conclude that it is proper to review the assessment of offense variable points under the standard of review articulated in *Hardy*.

marks and citation omitted; alteration in original). Examples of conduct deemed to interfere with the administration of justice include: (a) the provision of a false name to the police, (b) engaging in threats or intimidation of a victim or witness, (c) instructing a victim or witness to not reveal or disclose a defendant's conduct, (d) fleeing from police contrary to an order to freeze, (e) attempting to deceive the police in an investigation, (f) interfering with the efforts of store personnel to prevent a thief from leaving the premises without paying for store property, and (g) committing perjury during a court proceeding. *Id*. at 344.

At sentencing, in justifying the score of 10 points on OV 19, the prosecutor argued that the jury observed a one-hour video depicting defendant's interview by police, in which defendant lied about his involvement in the incident and refused to admit or discuss Damian's involvement in the crime. Defense counsel acknowledged that the video played for the jury provided "some indication that [defendant] was not forthright with the police," indicating it was within the discretion of the trial court to determine "[w]hether or not that would be of a substantial nature that would allow the changing from zero to ten [points]."

On appeal, defendant does not contend that he did not lie to the police during his interview. Instead, he contends that he was not candid with the police in order to avoid risking the lives of his family members. However, the trial court is not required to determine a defendant's justification for deceiving the police during an investigation in order to assess points for OV 19. Furthermore, defendant does not substantiate his argument that he lied to the police in order to protect his family. The fact that defendant was not candid with the police during his interview provided a proper basis for the trial court to assess 10 points for OV 19. See *Hershey*, 303 Mich App at 344. Accordingly, the trial court erred in assessing points for OV 5, but did not err in assessing 10 points for OV 19.

As a result, without the 15 points for OV 5, defendant's final OV score should have been 90 points rather than 105 points. See MCL 777.61. This would have placed him in OV level II, and his sentencing guidelines range would have been 162 to 270 months' imprisonment, rather than 180 to 300 months or life. See *id*.

## V. REMEDY

Because we conclude that there was a scoring error as well as a constitutional error, we must decide which remedy to apply in this case. In *Lockridge*, our Supreme Court held that where, as here, the minimum sentencing guidelines range was increased on the basis of judicial fact-finding under the mandatory guidelines system in place before July 29, 2015, but where the defendant did not properly preserve a challenge to the constitutionality of his sentencing, this Court should remand the case to the trial court for a "*Crosby* remand" to "determine whether that court would have imposed a materially different sentence but for the constitutional error." *Lockridge*, 498 Mich at 397. However, since the trial court incorrectly scored the guidelines, we conclude that remand for resentencing is the proper remedy.

Our Supreme Court in *Lockridge* clarified that "although the guidelines can no longer be mandatory, they remain a highly relevant consideration in a trial court's exercise of sentencing discretion." *Lockridge*, 498 Mich at 391. The Court concluded that the trial court " 'must consult those Guidelines and take them into account when sentencing.' " *Id*. (citation omitted).

The Court added, "Sentencing courts must . . . continue to consult the applicable guidelines range and take it into account when imposing a sentence." *Id*. at 392. It explained that the trial court must assess the highest number of points possible for all OVs, regardless of whether the assessment involves using judge-found facts. *Id*. at 392 n 28. We interpret this mandate as requiring that the trial court *correctly* assess the highest number of points possible for each sentencing variables and consult a correct sentencing guidelines range when imposing a sentence. When the trial court errs in scoring the guidelines, we believe that resentencing is required so that the trial court may correctly score the guidelines and consult the correct guidelines range when sentencing the defendant. Before the Michigan Supreme Court decided *Lockridge*, the proper remedy for a scoring error that altered the sentencing guidelines range was resentencing. See *People v Francisco*, 474 Mich 82, 89 n 8; 711 NW2d 44 (2006). We conclude that this remains the proper remedy for a scoring error that affects the sentencing guidelines range, even when the facts of the case also warrant a *Crosby* remand, since a defendant is entitled to be sentenced on the basis of accurate information and with consideration of the correct guidelines range. See *Lockridge*, 498 Mich at 391-392; *Francisco*, 474 Mich at 90. We do not believe that the *Crosby* remand procedure outlined in *Lockridge* would rectify the error in this case since the trial court's consideration whether it would have imposed a materially different sentence but for the constitutional error would not take into account the error in the scoring of the guidelines or the correct guidelines range. We conclude that resentencing under the correct, now advisory sentencing guidelines range is required. See *Lockridge*, 498 Mich at 397.[4]

We affirm defendant's conviction, but vacate his sentence and remand to the trial court for resentencing. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Kathleen Jansen
/s/ Douglas B. Shapiro

---

[4] We note that the Michigan Supreme Court recently heard oral arguments in a case addressing whether *Lockridge*, in rendering the sentencing guidelines advisory and/or by employing the *Crosby* remand, affected the remedy to which a defendant is entitled when the trial court incorrectly scores the sentencing guidelines and the error alters the sentencing guidelines range. See *People v Douglas*, 870 NW2d 730 (2015).