*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
July 22, 2021

v

No. 349921
Wayne Circuit Court
LC No. 18-004454-01-FH

ENGJULL THAQI,

Defendant-Appellant.

Before: RIORDAN, P.J., and M. J. KELLY and SHAPIRO, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial convictions of assault with intent to cause great bodily harm (AWIGBH), MCL 750.84; felonious assault, MCL 750.82; carrying a dangerous weapon with unlawful intent (CDWUI), MCL 750.226; unlawful possession of a firearm by a felon (felon-in-possession), MCL 750.224f; and four counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b.[1] For the reasons stated in this opinion, we affirm.

## I. BACKGROUND

This case arises from the shooting of Eugene Lyons, who survived the shooting but sustained significant injuries to his left leg. On the day in question, Lyons went to Motor City Coney Island to order an eggroll with the hope that his friend working at the restaurant would pay for his food. Lyons attempted to order the food from defendant, the restaurant's manager, but defendant refused to take the order because Lyons did not have any money. Lyons and defendant

---

[1] Defendant was sentenced as a third-offense habitual offender, MCL 769.11, and received concurrent sentences of 2 to 10 years' imprisonment for the AWIGBH conviction, 2 to 4 years' imprisonment for the felonious assault conviction, 2 to 5 years' imprisonment for the CDWUI conviction, and 2 to 5 years' imprisonment for the felon-in-possession conviction. Defendant was sentenced to two years' imprisonment for each felony-firearm conviction, to be served concurrent to one another but consecutive to the other sentences.

began arguing and defendant punched the partition separating the employees and customers. Defendant then retrieved a revolver from the back office and pointed it at Lyons through the partition.

Lyons left the restaurant and picked up a brick from behind the parking lot, and he conceded at trial that his intent was to throw it through the front window of the restaurant. A cook who was arriving for work noticed Lyons and informed defendant upon entering the building through the back door. Defendant then went out the back door to confront Lyons. Surveillance footage shows that within seconds of seeing Lyons across the parking lot, defendant fired a shot in Lyons's direction and then fired additional shots aimed toward the ground as he approached Lyons; one of the shots was at very close range. Defendant then grabbed Lyons by the neck and pushed him backwards before taking the brick from his hand. Lyons walked about a block before he encountered Detroit police officers who provided medical assistance for the gunshot wound to his leg. Lyons was taken by ambulance to the hospital and the officers proceeded to the restaurant where they arrested defendant.

At trial, the jury was shown surveillance footage of the pertinent events and Lyons testified for the prosecution. Defendant testified on his own behalf and claimed self-defense. The jury convicted defendant as charged, and this appeal followed.

## II. ANALYSIS

### A. DIRECTED VERDICT AND SUFFICIENCY OF THE EVIDENCE

Defendant argues the trial court erred by denying his motion for a directed verdict on the AWIGBH charge and that there was insufficient evidence to convict him of that charge because the prosecution failed to disprove his claim of self-defense. We disagree.[2]

"The elements of assault with intent to do great bodily harm less than murder are: (1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm less than murder." *People v Brown*, 267 Mich App 141, 147; 703 NW2d 230 (2005) (quotation marks and citation omitted). An actor intends to inflict great bodily harm when they intend "to do serious injury of an aggravated nature." *People v Russell*, 297 Mich App 707, 721; 825 NW2d 623 (2012). "Intent to cause serious harm can be inferred from the

---

[2] We review de novo a challenge to the sufficiency of the evidence. *People v Bailey*, 330 Mich App 41, 46; 944 NW2d 370 (2019). "Evidence is sufficient if, when viewed in the light most favorable to the prosecution, a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *People v Blevins*, 314 Mich App 339, 357; 886 NW2d 456 (2016) (quotation marks and citation omitted). "Direct and circumstantial evidence, including reasonable inferences arising from the use of circumstantial evidence, may provide sufficient proof to meet the elements of a crime." *Bailey*, 330 Mich App at 46. The same standards apply to defendant's claim that the trial court erred by denying his motion for a directed verdict. *People v Powell*, 278 Mich App 318, 320 n 1; 750 NW2d 607 (2008).

defendant's actions, including the use of a dangerous weapon or the making of threats." *People v Stevens*, 306 Mich App 620, 629; 858 NW2d 98 (2014).

Defendant does not dispute that there was sufficient evidence to establish the elements of AWIGBH beyond a reasonable doubt. It is clear that an assault occurred, and the multiple shots defendant fired in Lyons' direction without warning allowed the jury to reasonably infer an intent to do great bodily harm. Defendant argues, however, that the prosecution failed to rebut his claim of self-defense. Deadly force may be used in self-defense if the defendant "honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual." MCL 780.972(1)(a). "Once a defendant satisfies the initial burden of producing some evidence from which a jury could conclude that the elements necessary to establish a prima facie defense of self-defense exist, the prosecution bears the burden of disproving the affirmative defense of self-defense beyond a reasonable doubt." *People v Dupree*, 486 Mich 693, 712; 788 NW2d 399 (2010).

When viewed in a light most favorable to the prosecution, the evidence supports the jury's conclusion that defendant's actions were "not necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual." MCL 780.972(1)(a). At trial, defendant was adamant that he acted to protect the restaurant's customers. Defendant specifically testified that he was concerned about customers going through the restaurant's drive-thru. However, as the prosecution pointed out during its cross-examination of defendant, at the time defendant shot Lyons, no customers were present in the drive-thru or in the rear parking lot where the shooting occurred. There were a couple customers within the restaurant, but Lyons was not near them.[3] Further, as the prosecution argued, the events both inside and outside of the restaurant suggest that defendant was acting out of anger toward Lyons rather than a reasonable belief that deadly force was necessary to prevent imminent harm to others. Accordingly, based on the prosecution's proofs, the jury reasonably concluded that defendant and the restaurant's customers were not faced with imminent death or great bodily harm.

In sum, sufficient evidence was adduced to sustain defendant's conviction of AWIGBH and rebut his claim of self-defense, and the trial court did not err by denying the motion for a directed verdict.

---

[3] Defendant testified that Lyons threatened to hurt "everybody" in the restaurant during the initial argument; Lyons was not asked if he threatened a customer, but he denied threatening defendant. Defendant also testified that the cook arriving for work in the parking lot heard Lyons say that he was going to "f*** everybody up." The prosecutor objected to this double hearsay, but the trial court admitted the statement under MRE 803(3) as showing defendant's then-existing state of mind. In any event, the jury was free to believe or disbelieve defendant's testimony about the alleged threat. See *People v Perry*, 460 Mich 55, 63; 594 NW2d 477 (1999).

## B. FIFTH AMENDMENT—PROSECUTORIAL MISCONDUCT

Defendant next argues that he was denied a fair trial when the prosecutor questioned him regarding his silence in violation of his Fifth Amendment right against self-incrimination. We again disagree.[4]

The Fifth Amendment of the United States Constitution states that "[n]o person shall . . . be compelled in any criminal case to be a witness against himself . . . ." US Const, Am V. See also Const 1963, art 1, § 17. "The Fifth Amendment has been made applicable to the states through the Due Process Clause of the Fourteenth Amendment." *People v Shafier*, 483 Mich 205, 310 n 7; 768 NW2d 305 (2009).

> A defendant's right to due process guaranteed by the Fourteenth Amendment is violated where the prosecutor uses his postarrest, post-*Miranda*[5] warning silence for impeachment or as substantive evidence unless it is used to contradict the defendant's trial testimony that he made a statement, that he cooperated with police, or that trial was his first opportunity to explain his version of events. [*People v Solmonson*, 261 Mich App 657, 664; 683 NW2d 761 (2004), citing *Doyle v Ohio*, 426 US 610, 619 n 11; 96 S Ct 2240; 49 L Ed 2d 91 (1976).]

Defendant's claim of error arises from an exchange that occurred during cross-examination:

> [*Prosecutor*]: You knew why the police were there to arrest you, correct?
>
> [*Defendant*]: I knew why were—the police were there. Not to arrest me.
>
> [*Prosecutor*]: You had an opportunity to speak with the police?
>
> [*Defendant*]: No. I did not.
>
> [*Prosecutor*]: The police, they've never taped up your mouth, right?

After this question, defense counsel asked to approach the bench for a sidebar discussion. At the conclusion of the sidebar discussion, the prosecutor moved on to question defendant about other topics.

We addressed a similar issue in *Solmonson*, 261 Mich App 657. There, we explained that comments regarding a defendant's silence are constitutionally problematic only when "there is reason to conclude that his silence was attributable to the invocation of the defendant's Fifth

---

[4] Constitutional questions are reviewed de novo. *People v Pipes*, 475 Mich 267, 274; 715 NW2d 290 (2006). "Claims of prosecutorial misconduct are generally reviewed de novo to determine whether the defendant was denied a fair trial." *People v Dunigan*, 299 Mich App 579, 588; 831 NW2d 243 (2013).

[5] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

Amendment privilege." *Id*. at 664-665. Because there was no specific evidence establishing whether the silence referenced by the prosecutor in that case occurred before the defendant was advised of his *Miranda* rights or after he specifically invoked his right to remain silent, there was no constitutional error. *Id*. Similarly, in this case it is unclear whether defendant was informed of his *Miranda* rights and there was no testimony suggesting that defendant specifically informed the police that he was invoking his right to remain silent. Accordingly, as in *Solmonson*, defendant has failed to establish that the prosecutor was asking about or commenting on a constitutionally protected silence, which is the determinative fact for this issue.

With respect to defendant's argument of prosecutorial misconduct, the question is whether the prosecutor's conduct denied defendant a fair and impartial trial. *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). Claims of prosecutorial misconduct are decided on a case-by-case basis, "with the reviewing court examining the pertinent portion of the record and evaluating the prosecutor's remarks in context." *People v Atkins*, 259 Mich App 545, 562; 675 NW2d 863 (2003). As discussed, the record does not support the conclusion that the prosecutor impermissibly questioned defendant about his post-*Miranda* warnings silence. Absent information in the record showing that defendant had been provided his *Miranda* warnings or invoked his constitutional right to silence, we cannot conclude that any reference by the prosecution to defendant's silence denied him a fair trial. Thus, defendant's argument of prosecutorial misconduct fails.

## C. VOIR DIRE

Defendant also argues that the trial court reversibly erred by refusing to ask the prospective jurors a proposed question submitted by defendant. We find no abuse of discretion in the trial court's ruling.[6]

MCR 6.412(C) governs the voir dire of prospective jurors:

> (1) *Scope and Purpose*. The scope of voir dire examination of prospective jurors is within the discretion of the court. It should be conducted for the purposes of discovering grounds for challenges for cause and of gaining knowledge to facilitate an intelligent exercise of peremptory challenges. The court should confine the examination to these purposes and prevent abuse of the examination process.
>
> (2) *Conduct of the Examination*. The court may conduct the examination of prospective jurors or permit the lawyers to do so. If the court conducts the examination, it may permit the lawyers to supplement the examination by direct questioning or by submitting questions for the court to ask. On its own initiative

---

[6] A court's conduct of voir dire is reviewed for abuse of discretion. *People v Williams*, 241 Mich App 519, 522; 616 NW2d 710 (2000). "[T]he court abuses its discretion if it does not adequately question jurors regarding potential bias so that challenges for cause, or even peremptory challenges, can be intelligently exercised." *People v Tyburski*, 445 Mich 606, 619; 518 NW2d 441 (1994) (opinion by MALLET, J.).

or on the motion of a party, the court may provide for a prospective juror or jurors to be questioned out of the presence of the other jurors.

"A defendant who chooses a jury trial has an absolute right to a fair and impartial jury." *People v Tyburski*, 445 Mich 606, 618; 518 NW2d 441 (1994) (opinion by MALLET, J.). But a defendant does not "have a right in every case to have the court ask questions submitted by counsel." *Id*. at 619. "In reviewing the trial court's conduct, this Court must determine whether the trial court conducted a voir dire 'sufficiently probing . . . to uncover potential juror bias.' " *People v Sawyer*, 215 Mich App 183, 187; 545 NW2d 6 (1996), quoting *Tyburski*, 445 Mich at 618.

Defendant requested that the trial court specifically ask the jurors, "Are any prospective jurors against gun ownership?" The trial court declined to ask this question because, given defendant's prior felony, "under the law . . . there is no excuse for [defendant] being in possession of a gun during the occurrence of the incident that gave rise to this case." The court was concerned that the proposed question would have "unduly focused" the jury on an irrelevant issue. On appeal, defendant argues that the question was necessary because it would have elicited "essential information" considering that the charges against defendant involved the possession or use of a gun. Defendant asserts that by omitting the question related to gun ownership, the trial court's voir dire failed to uncover potential bias regarding guns.

Contrary to defendant's argument, the proposed question was not necessary to uncover potential bias. As noted by the trial court, defendant's status as a felon precluded him from owning or possessing a firearm. Thus, the prospective jurors' feelings about gun ownership were irrelevant in this case because there was no question that defendant could not legally possess a gun. For this reason, the trial court did not abuse its discretion by declining to ask the question about gun ownership.

## D. JURY INSTRUCTIONS

Lastly, defendant argues that the trial court reversibly erred when it utilized *Black's Law Dictionary* (7th ed) to define, in response to a request by the jury, the meaning of the term "imminent." We conclude that the additional instruction given by the trial court does not require reversal.[7]

After the jury requested guidance on the definition of "imminent," the trial court gave the jury the following definition from *Black's Law Dictionary* (7th ed): "The danger resulting from an immediate threatened injury or death sufficient to cause a reasonable and prudent person to defend himself or herself or another individual." Defendant argues the trial court should have used

---

[7] "Claims of instructional error are reviewed de novo on appeal." *People v Fennell*, 260 Mich App 261, 264; 677 NW2d 66 (2004). "Where confusion is expressed by a juror, it is incumbent upon the court to guide the jury by providing a lucid statement of the relevant legal criteria." *People v Miller*, 326 Mich App 719, 730; 929 NW2d 821 (2019) (quotation marks and citation omitted). "The trial court's instructions must adequately provide the jury with a sufficient understanding of the elements of the crime. However, whether to provide additional instructions at the jury's request is within the court's discretion." *Id*. at 730-731.

definitions from lay dictionaries, such as "about to happen," "happening very soon," and "ready to take place." According to defendant, these definitions more closely relate to the language used in MCL 780.972(1).

Defendant's argument is not without merit. Courts generally look to lay dictionaries rather than legal dictionaries "when defining common words or phrases that lack a unique legal meaning." *People v Meeker*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket No. 355046); slip op at 4 n 2. And the word "imminent" does not have a unique legal meaning. Further, there is no definition of "imminent" in *Black's Law Dictionary* (7th ed), and the court actually gave the jury the definition for "imminent danger."

However, "[e]ven if the instructions are imperfect, there is no error if they fairly presented the issues to be tried and sufficiently protected the defendant's rights." *People v Milton*, 257 Mich App 467, 475; 668 NW2d 387 (2003). See also *People v Lyles*, 501 Mich 107, 117-118; 905 NW2d 199 (2017) (preserved instructional errors are reviewed under the harmless-error standard). Defendant fails to establish prejudice from the definition used by the trial court. Defendant asserts that the trial court's definition does not conform with MCL 780.972(1), but he fails to explain how the court's definition misaligns with the statutory language. Indeed, the court's definition requiring an "immediate threatened injury or death sufficient to cause a reasonable and prudent person to defend himself or herself or another individual," comports well enough with the statute. See MCL 780.972(1).[8] Further, while defendant argues that the "expressed confusion" of the jury warrants reversal, he does not explain how the trial court's additional instruction did not adequately address the jury's confusion. Nor does defendant argue that the jury would have reached a different result had the court provide a definition from a lay dictionary, and we see no basis to reach that conclusion given the ample evidence presented that there was not an imminent threat requiring the use of deadly force. Accordingly, we conclude that the additional instruction provided by the trial court does not require reversal.

Affirmed.

/s/ Michael J. Riordan
/s/ Michael J. Kelly
/s/ Douglas B. Shapiro

---

[8] MCL 780.972(1) states in pertinent part:

(1) An individual who has not or is not engaged in the commission of a crime at the time he or she uses deadly force may use deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if either of the following applies:

(a) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual.