*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
January 16, 2025
12:36 PM

Plaintiff-Appellee,

v

No. 362889
Ottawa Circuit Court
LC No. 21-044638-FH

BENJAMIN HARDEN JACOBS,

Defendant-Appellant.

Before: PATEL, P.J., and MURRAY and YATES, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial conviction of first-degree home invasion, MCL 750.110a(2). Defendant was sentenced, as a second-offense habitual offender, MCL 769.10, to serve 96 to 360 months' imprisonment. On appeal, defendant asserts that defense counsel was ineffective for several reasons: (1) failing to request a mistake-of-fact jury instruction concerning defendant's mistaken belief that he had permission to enter the victims' home; (2) failing to request a jury instruction on the lesser included offenses of third-degree home invasion and breaking and entering without permission; and (3) failing to request that the court provide a unanimity instruction. Moreover, defendant asserts that the trial court erred by denying his request to provide a jury instruction concerning his intent to enter the home without permission. In the alternative, defendant contends that defense counsel was ineffective for failing to request a general-intent instruction. Finally, defendant argues that his 96-month minimum sentence is disproportionate to the offense and to him as the offender. We affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

This case arises out an unusual home invasion that occurred at approximately 3:00 a.m. on June 1, 2021, in Allendale, Michigan. Homeowner Christopher Adamson was awoken by defendant, whom Adamson did not know, pounding on the front door of Adamson's home and yelling. Adamson made two calls to 911. During the second call, defendant entered the home through the front door. Adamson and his wife went into the attached garage to avoid a confrontation with defendant. They then discovered that they were locked out of the house while their teenage children remained upstairs. Deputies with the Ottawa County Sheriff's Department

-1-

arrived and made entry. Defendant had barricaded himself in an upstairs bedroom. The deputies were eventually able to enter the room and arrest defendant. Defendant had kicked out a couple spindles from the staircase. He did not cause any damage to the front door that he used to enter the house.

Defendant testified at trial that he ran to Adamson's home believing that a retired county sheriff's deputy lived there. He thought that members of the "Mafia" were after him, and he was attempting to get help.

Defendant was convicted of first-degree home invasion, with resisting and obstructing a police officer as the underlying felony. Defendant filed a postjudgment motion for a new trial and an evidentiary hearing on the basis that he was denied the effective assistance of counsel at trial. The trial court allowed testimony at an evidentiary hearing concerning defense counsel's failure to request jury instructions for lesser offenses of third-degree home invasion and breaking and entering without permission. The trial court denied defendant's motion for a new trial. This appeal followed.

## II. ANALYSIS

### A. STANDARDS OF REVIEW

An ineffective-assistance-of-counsel claim presents a "mixed question of fact and constitutional law." *People v Yeager*, 511 Mich 478, 487; 999 NW2d 490 (2023). Constitutional questions are reviewed de novo, while the trial court's findings of fact are reviewed for clear error. *Id*.

We review claims of instructional error de novo. *People v Kowalski*, 489 Mich 488, 501; 803 NW2d 200 (2011). But a trial court's determination whether a jury instruction applies to the facts of the case is reviewed for an abuse of discretion. *People v Dupree*, 486 Mich 693, 702; 788 NW2d 399 (2010). Sentencing decisions are also reviewed for an abuse of discretion. *People v Boykin*, 510 Mich 171, 182; 987 NW2d 58 (2022). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008).

### B. MISTAKE-OF-FACT INSTRUCTION

First, defendant argues that he was denied the effective assistance of counsel because defense counsel failed to request a mistake-of-fact jury instruction. We disagree.

The United States and Michigan Constitutions afford criminal defendants the right to effective assistance of counsel. *Yeager*, 511 Mich at 488, citing Const 1963, art 1, § 20; US Const Am VI; *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). To prevail on a claim of ineffective assistance, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that [the] outcome would have been different." *Yeager*, 511 Mich at 488 (cleaned up). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. (cleaned up). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Head*, 323 Mich App 526, 539; 917 NW2d

752 (2018) (cleaned up). We will not find trial counsel to be ineffective where an objection would have been meritless or futile, *Head*, 323 Mich App at 539, nor will we second-guess matters of trial strategy or "assess counsel's competence with the benefit of hindsight[,]" *People v Abcumby-Blair*, 335 Mich App 210, 237; 966 NW2d 437 (2020) (cleaned up).

"It is the function of the trial court to clearly present the case to the jury and instruct on the applicable law." *People v Everett*, 318 Mich App 511, 529; 899 NW2d 94 (2017) (cleaned up). "A criminal defendant has the right to have a properly instructed jury consider the evidence against him." *People v Mills*, 450 Mich 61, 80; 537 NW2d 909 (1995). "The instruction to the jury must include all elements of the crime charged . . . and must not exclude from jury consideration material issues, defenses or theories if there is evidence to support them." *People v Reed*, 393 Mich 342, 349-350; 224 NW2d 867 (1975). "Jury instructions are reviewed in their entirety, and there is no error requiring reversal if the instructions sufficiently protected the rights of the defendant and fairly presented the triable issues to the jury." *People v Dobek*, 274 Mich App 58, 82; 732 NW2d 546 (2007).

First-degree home invasion, MCL 750.110(a)(2), is defined as the following:

> A person who breaks and enters a dwelling with intent to commit a felony, larceny, or assault in the dwelling, a person who enters a dwelling without permission with intent to commit a felony, larceny, or assault in the dwelling, or a person who breaks and enters a dwelling or enters a dwelling without permission and, at any time while he or she is entering, present in, or exiting the dwelling, commits a felony, larceny, or assault is guilty of home invasion in the first degree if at any time while the person is entering, present in, or exiting the dwelling either of the following circumstances exists:
>
> (a) The person is armed with a dangerous weapon.
>
> (b) Another person is lawfully present in the dwelling.

A defendant can be convicted of first-degree home invasion on the basis of different theories. See *People v Wilder*, 485 Mich 35, 43-44; 780 NW2d 265 (2010) (explaining that first-degree home invasion "can be committed in several different ways, each of which involves alternative elements necessary to complete the crime").

In this case, defendant was charged with first-degree home invasion on the basis of the following elements: (1) defendant entered the dwelling without permission; (2) while entering, present in, or exiting the dwelling, defendant committed the felony of resisting and obstructing a police officer; and (3) while defendant was entering, present in, or exiting the dwelling, another person was lawfully present in the dwelling. See *id*. According to MCL 750.11a(1)(c), the term "without permission" is defined as "without having obtained permission to enter from the owner or lessee of the dwelling or from any other person lawfully in possession or control of the dwelling."

Defendant argues that the first element was not established because he mistakenly believed that he had permission to enter Adamson's home. "A mere belief, unsupported by a showing of due care and bona fide, reasonable effort to ascertain the facts, is insufficient to constitute a mistake

of fact defense." *People v Quinn*, 440 Mich 178, 196; 487 NW2d 194 (1992) (cleaned up). The testimony at trial did not establish that defendant was reasonably mistaken in his belief that he had permission to enter the home. Both Adamson and his wife testified that they did not give defendant permission to enter their home. Adamson called 911 and expressed his fear of the incoherent stranger who was pounding on his door at 3:00 a.m. And defendant's testimony did not suggest that either Adamson or his wife gave him express permission. Rather, he testified that he heard the homeowner say that the door was unlocked[1] and that he perceived that statement to mean that he had permission to enter. However, defendant's testimony indicated that he was acting as a result of paranoid delusions—he testified that he was not thinking rationally and that he believed that members of the Mafia were after him. He arrived at a stranger's home at 3:00 a.m. and started frantically pounding on the door and yelling. Although defendant testified that he believed that a retired police deputy lived at the home, it does not appear that defendant actually ever met this person. Defendant explained that he stripped down to his underwear to show the homeowner that he was not carrying any weapons. He opened the front door and entered the house while still only wearing his underwear. The homeowners did not open the door or invite defendant into the home. After defendant entered the home, he did not encounter any of the occupants of the home because the children were upstairs in their rooms, and Adamson and his wife retreated to the garage to avoid him. Defendant did not attempt to make any contact with members of the household to obtain help. Although defendant provided testimony supporting his theory that he went to the home for his own safety, he did not present evidence that he was reasonably mistaken concerning permission to enter the home. See *id*.

Similarly, defendant's mistake of fact concerning permission is not a defense to entering the dwelling without permission because the intention to enter the dwelling without permission is not an element of the offense. See *Quinn*, 440 Mich at 197. Rather, the element requires that defendant entered the dwelling and that he did not have permission to do so. See *Wilder*, 485 Mich at 43. Defendant was charged under the general-intent theory of first-degree home invasion. "Specific intent is defined as a particular criminal intent beyond the act done, whereas general intent is merely the intent to perform the physical act itself." *People v Abramski*, 257 Mich App 71, 72; 665 NW2d 501 (2003) (cleaned up). "A general intent crime only requires proof that the defendant purposefully or voluntarily performed the wrongful act." *Id*. at 73 (cleaned up). Because a mistake-of-fact instruction was inappropriate on the basis of the evidence presented, defense counsel was not deficient for failing to request such a jury instruction. See *People v Gonzalez*, 468 Mich 636, 645; 664 NW2d 159 (2003).

## C. SPECIFIC-INTENT INSTRUCTION

Next, defendant argues that the trial court erred by denying his request for a jury instruction concerning his intent to enter the home without permission. In the alternative, defendant asserts that defense counsel was ineffective for failing to request a general-intent instruction. We disagree.

"A crime requiring a particular criminal intent beyond the act done is generally considered a specific intent crime; whereas, a general intent crime merely requires the intent to perform the

---

[1] The victims did not corroborate this claim. Indeed, Adamson's wife testified that she yelled, "Go away, leave us alone."

physical act itself." *People v Fennell*, 260 Mich App 261, 266; 677 NW2d 66 (2004) (cleaned up). In other words, the term " 'specific intent' is often used to designate a special mental element which is required above and beyond any mental state required with respect to the actus reus of the crime." *Id*. (cleaned up).

In this case, the prosecutor charged defendant with first-degree home invasion under the theory that he entered Adamson's home without permission and that he resisted and obstructed a police officer while he was present in the home. See MCL 750.110a(2). The defense requested a specific-intent instruction on the basis that defendant did not intend to enter Adamson's home without permission. However, because the prosecution did not charge defendant under a theory that required specific intent, no such instruction was warranted. The trial court properly instructed the jury consistent with the model jury instructions.

To the extent that defendant argues that the trial court erred by instructing on first-degree home invasion as a strict-liability offense, that argument is without merit. The prosecutor charged defendant under the general-intent theory of first-degree home invasion as permitted by MCL 750.110a(2).

> [T]he distinction between a strict-liability crime and a general intent crime is that, for a general-intent crime, the people must prove that the defendant purposefully or voluntarily performed the wrongful act, whereas, for a strict-liability crime, the people merely need to prove that the defendant performed the wrongful act, irrespective of whether he intended to perform it. [*People v Jensen (On Remand)*, 231 Mich App 439, 451; 586 NW2d 748 (1998).]

As explained earlier, the trial court properly instructed the jury concerning the theory of first-degree home invasion with which defendant was charged. The prosecutor had to establish that defendant entered Adamson's home without permission, that while defendant was present in the home he resisted and obstructed a police officer, and that while defendant was in the home there was another person lawfully present in the home. See *Wilder*, 485 Mich at 43. Defendant was not charged with or convicted of a strict-liability crime. See *Jensen (On Remand)*, 231 Mich App at 451.

In the alternative, defendant argues that defense counsel was ineffective for failing to request a general-intent instruction. Defendant does not identify the "general intent instruction" that defense counsel should have requested. Defense counsel requested a specific-intent instruction, which the trial court rejected. The trial court provided the jury with instructions consistent with the model jury instructions. The trial court also provided the following instruction concerning intent: "The defendant's intent may be proved by what he said, what he did, how he did it, or by any other facts and circumstances in evidence." Because any request by defense counsel to provide an additional general-intent instruction would have been unsuccessful, counsel was not ineffective for failing to request a general-intent instruction. See *Head*, 323 Mich App at 539.

## D. LESSER OFFENSES

Defendant further asserts that defense counsel was ineffective for failing to request jury instructions on lesser offenses third-degree home invasion and breaking and entering without permission. We disagree.

"A lesser offense is necessarily included in the greater offense when the elements necessary for the commission of the lesser offense are subsumed within the elements necessary for the commission of the greater offense." *Wilder*, 485 Mich at 41. "[A] jury instruction on a necessarily included lesser offense is appropriate if the charged greater offense requires the jury to find a disputed factual element that is not part of the lesser included offense and a rational view of the evidence would support it." *Yeager* 511 Mich at 490 (cleaned up). However, "[n]ecessarily included lesser offenses are distinguishable from cognate offenses. Cognate offenses share several elements and are of the same class or category as the greater offense, but contain elements not found in the greater offense." *Wilder*, 485 Mich at 41. "Accordingly, the trier of fact may not find a defendant not guilty of a charged offense but guilty of a cognate offense because the defendant would not have had notice of all the elements of the offense that he or she was required to defend against." *Id*.

"[B]reaking and entering without permission is a necessarily included lesser offense of first-degree home invasion." *People v Silver*, 466 Mich 386, 392; 646 NW2d 150 (2002). "Breaking and entering without permission requires (1) breaking and entering or (2) entering the building (3) without the owner's permission." *Id*. As a result, "[i]t is impossible to commit the first-degree home invasion without first committing a breaking and entering without permission." *Id*. "The two crimes are distinguished by the intent to commit 'a felony, larceny, or assault,' once in the dwelling." *Id*.

On the other hand, whether third-degree home invasion is a necessarily included lesser offense of first-degree home invasion requires additional analysis because "both first-degree home invasion and third-degree home invasion can be committed in several different ways, each of which involves alternative elements necessary to complete the crime." *Wilder*, 485 Mich at 43. MCL 750.110a(4) provides:

> A person is guilty of home invasion in the third degree if the person does either of the following:
>
> (a) Breaks and enters a dwelling with intent to commit a misdemeanor in the dwelling, enters a dwelling without permission with intent to commit a misdemeanor in the dwelling, or breaks and enters a dwelling or enters a dwelling without permission and, at any time while he or she is entering, present in, or exiting the dwelling, commits a misdemeanor.
>
> (b) Breaks and enters a dwelling or enters a dwelling without permission and, at any time while the person is entering, present in, or exiting the dwelling, violates any of the following ordered to protect a named person or persons:
>
> (*i*) A probation term or condition.

(*ii*) A parole term or condition.

(*iii*) A personal protection order term or condition.

(*iv*) A bond or bail condition or any condition of pretrial release.

A defendant commits third-degree home invasion if he or she commits a misdemeanor while entering, present in, or exiting the dwelling. MCL 750.110a(4)(a).

> [T]o determine whether the specific elements used to convict defendant of third-degree home invasion in this case constitute a necessarily included lesser offense of first-degree home invasion, one must examine the offense of first-degree home invasion as charged and determine whether the elements of third-degree home invasion as convicted are subsumed within the charged offense. [*Wilder*, 485 Mich at 45.]

Defendant was charged with first-degree home invasion under the theory that he entered Adamson's home without permission, and while he was present in the home, he committed the felony of resisting and obstructing a police officer. Defendant argues that the evidence supported an instruction for third-degree home invasion on the basis that defendant committed misdemeanor malicious destruction of property. According to MCL 750.377a(1)(c),

> If any of the following apply, the person is guilty of a misdemeanor punishable by imprisonment for not more than 1 year or a fine of not more than $2,000.00 or 3 times the amount of the destruction or injury, whichever is greater, or both imprisonment and a fine:
>
> (*i*) The amount of the destruction or injury is $200.00 or more but less than $1,000.00.
>
> (*ii*) The person violates subdivision (e) or (f) and has 1 or more prior convictions for committing or attempting to commit an offense under this section or a local ordinance substantially corresponding to this section.

However, defendant was not charged in relation to the broken spindles from the stairs, and the damage was not related to the resisting-and-obstructing charge. In fact, he caused the damage before officers entered the house. If the jury did not believe that defendant was guilty of resisting and obstructing, then it would have found defendant not guilty of first-degree home invasion because defendant did not commit a felony while in the home. Accordingly, the malicious destruction of property was not subsumed into first-degree home invasion as charged in this case. Therefore, third-degree home invasion was a cognate offense, rather than a necessarily included lesser offense, of first-degree home invasion. See *Wilder*, 485 Mich at 41. "[T]he trier of fact may only consider offenses that are inferior to the greater offense charged." *People v Heft*, 299 Mich App 69, 74; 829 NW2d 266 (2012) (cleaned up). "The trier of fact may *not* consider cognate offenses: those offenses that contain an element not found in the greater offense." *Id.*

-7-

In any event, even if third-degree home invasion was a necessarily included lesser offense in this case, defense counsel was not ineffective for failing to request an instruction as to third-degree home invasion or breaking and entering without permission. "Failing to request a particular jury instruction can be a matter of trial strategy." *People v Dunigan*, 299 Mich App 579, 584; 831 NW2d 243 (2013).

At the evidentiary hearing, defense counsel testified that he declined to request an instruction on third-degree home invasion because he knew that defendant already declined an offer to plead guilty to that offense. In addition, he explained that requesting instructions as to lesser offenses, including third-degree home invasion and breaking and entering without permission, was inconsistent with defendant's testimony that he believed that he had permission to enter the home. He also stated that the defense attempted to show that defendant did not intend to resist or obstruct officers. He was not trying to keep deputies out of the room because he wanted them there for his own protection. Defense counsel stated that he was going for a straight, not-guilty verdict.

If the defense had been successful, then defendant would have been acquitted rather than convicted of a lesser offense. "[T]his Court has specifically recognized that an all-or-nothing defense is a legitimate trial strategy." *People v Allen*, 331 Mich App 587, 610; 953 NW2d 460 (2020), vacated in part on other grounds 507 Mich 856 (2021). The fact that this strategy "ultimately failed does not constitute ineffective assistance of counsel." *People v Kevorkian*, 248 Mich App 373, 414-415; 639 NW2d 291 (2001).

To the extent that defense counsel testified at the evidentiary hearing that, if he had a do-over of defendant's trial, then he would ask for the jury to be instructed as to lesser offenses, the fact "that counsel could conceivably have done more, or that a particular trial strategy failed, does not mean counsel's performance was deficient." *People v Blevins*, 314 Mich App 339, 351; 886 NW2d 456 (2016). Accordingly, defendant has not established that he was denied the effective assistance of counsel on the basis that defense counsel failed to request instructions for lesser offenses. See *Yeager*, 511 Mich at 488.

## E. UNANIMITY INSTRUCTION

Defendant next contends that the trial court erred by failing to provide a unanimity instruction for resisting and obstructing a police officer. In the alternative, defendant argues that defense counsel was ineffective for failing to request such an instruction.

In this case, defendant was charged with first-degree home invasion with resisting and obstructing a police officer as the underlying felony. MCL 750.81d(1), in pertinent part, provides:

> [A]n individual who assaults, batters, wounds, resists, obstructs, opposes, or endangers a person who the individual knows or has reason to know is performing his or her duties is guilty of a felony punishable by imprisonment for not more than 2 years or a fine of not more than $2,000.00, or both.

The term "obstruct" is defined as "the use or threatened use of physical interference or force or a knowing failure to comply with a lawful command." MCL 750.81d(7)(a). "Person" includes "[a] police officer of this state or of a political subdivision of this state . . . ." MCL 750.81d(7)(b)(*i*).

"Michigan law provides criminal defendants the right to a unanimous jury verdict." *People v Chelmicki*, 305 Mich App 58, 67; 850 NW2d 612 (2014). See also MCR 6.410(B). "In order to protect a defendant's right to a unanimous verdict, it is the duty of the trial court to properly instruct the jury regarding the unanimity requirement." *People v Cooks*, 446 Mich 503, 511; 521 NW2d 275 (1994). "Often, the trial court fulfills that duty by providing the jury with a general instruction on unanimity." *Chelmicki*, 305 Mich App at 67. "However, a specific unanimity instruction may be required in cases in which 'more than one act is presented as evidence of the actus reus of a single criminal offense' and each act is established through materially distinguishable evidence that would lead to juror confusion." *Id*., quoting *Cooks*, 446 Mich at 512-513.

"[W]hen a statute lists alternative means of committing an offense which in and of themselves do not constitute separate and distinct offenses, jury unanimity is not required with regard to the alternate theory." *Chelmicki*, 305 Mich App at 68 (cleaned up). In *Chelmicki*, the "defendant was charged with one count of unlawful imprisonment, which expressly provides alternative theories under which a defendant may be convicted." *Id*. This Court explained that "[t]he alternative theories each relate to a single element of the offense, and are merely different ways of establishing that element." *Id*. As a result, this Court opined that the defendant "was properly convicted of unlawful imprisonment even if some jurors believed he restrained the victim by means of a weapon, and the rest of the jurors believed he restrained the victim in order to facilitate the commission of the felony of arson . . . ." *Id*. This Court determined that no specific-unanimity instruction was necessary and that the defendant's claim of ineffective assistance of counsel failed because defense counsel was not required to make a meritless request. *Id*.

In this case, there was evidence that defendant resisted the responding police officers in several ways. First, defendant barricaded himself in the bedroom and refused Deputy Adam Schaller's command to open the door. Defendant then pushed back on the door with a chair while Deputy Schaller attempted to push the door open. Once defendant was lying on the floor, he kicked at the officers and refused to put his hands behind his back while they attempted to handcuff him. Defendant testified that he was trying to keep Deputy Schaller out of the room because he did not know that Deputy Schaller was a police officer. He further denied that he resisted once the police officers were in the room. He did not remember kicking at the officers, and he claimed that he could not get his left arm behind his back because it was under his body and the weight of the officers on top of him precluded him from moving his arm.

A specific-unanimity instruction was not applicable to this case. The prosecutor presented evidence of multiple acts that constituted alternative means to commit the offense of resisting and obstructing a police officer. See *id*. The jury could properly find defendant guilty of resisting and obstructing if some jurors believed that he resisted by failing to obey Deputy Schaller's command to open the door, and the rest believed that he resisted by failing to put his hands behind his back. See *id*. Moreover, defendant did not present a separate defense for the various acts of resisting and obstructing. Rather, he claimed that he did not know that Deputy Schaller was a police officer and that he complied once he knew that Deputy Schaller was a police officer. Because no specific unanimity instruction was necessary, defense counsel was not ineffective for failing to make a meritless request. See *id*.

## F. SENTENCING

Finally, defendant argues that his 96-month minimum sentence is disproportionate. We disagree.

"[W]ithin-guidelines sentences are to be reviewed for reasonableness[.]" *People v Posey*, 512 Mich 317, 359; 1 NW3d 101 (2023) (Opinion by BOLDEN, J.). "[T]he key to reasonableness review is whether the sentence is proportionate." *Id.* Thus, "the proper inquiry when reviewing a sentence for reasonableness is whether the trial court abused its discretion by violating the 'principle of proportionality' set forth in *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990), 'which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender.' " *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017). A proportionate sentence considers "the reformation of the offender, the protection of society, the discipline of the offender, and the deterrence of others from committing the same offense." *Boykin*, 510 Mich at 183. "However, these are not the only relevant sentencing criteria and trial courts are not required to consider each of these factors when imposing a sentence." *Id*.

"When a trial court sentences a defendant within the guidelines' recommended range, it creates a presumption that the sentence is proportionate." *Posey*, 512 Mich at 360. To overcome that presumption, "the defendant bears the burden of demonstrating that their within-guidelines sentence is unreasonable or disproportionate." *Id*. at 359. A defendant may overcome the presumptive proportionality of a within-guidelines sentence by "present[ing] unusual circumstances that would render the presumptively proportionate sentence disproportionate." *People v Bowling*, 299 Mich App 552, 558; 830 NW2d 800 (2013) (cleaned up); see also *Milbourn*, 435 Mich at 636 ("Conceivably, even a sentence within the sentencing guidelines could be an abuse of discretion in unusual circumstances."). "Unusual" means "uncommon, not usual, rare." *People v Sharp*, 192 Mich App 501, 505; 481 NW2d 773 (1992) (cleaned up).

In this case, defendant does not dispute that the applicable guidelines range was 51 to 106 months. He argues that the range was too large, which resulted in the trial court having unfettered discretion. However, defendant does not provide any authority showing that this guideline range was unusual or unreasonable. See *1031 Lapeer LLC v Rice*, 290 Mich App 225, 233-234; 810 NW2d 293 (2010). In any event, the range was extended upward because defendant was sentenced as a second-offense habitual offender under MCL 769.10.

Defendant contends that the unusual circumstances underlying the offense support a sentence at the lower end of the guidelines. Indeed, the circumstances in this case were unusual because of defendant's erratic behavior. However, those circumstances did not require the trial court to impose a sentence at the lower end of the guidelines. See *Bowling*, 299 Mich App at 558. Defendant approached a stranger's home in a rural area at 3:00 a.m. and started pounding on the door and yelling. He stripped down to his underwear. He made entry into the house and locked the door behind him—locking the adult homeowners outside while the children were upstairs. He caused damage to the house by kicking out spindles from the stairs. Once police officers arrived and kicked in the door, defendant barricaded himself in a bedroom. It took three officers and two sets of handcuffs to finally subdue him. The trial court observed that the homeowners were rightfully afraid of defendant and what he might do.

Although defendant's sentence was on the upper end of the minimum guidelines range, he has not demonstrated that this within-guidelines sentence was unreasonable or disproportionate under the circumstances in this case. See *Posey*, 512 Mich at 357. Moreover, although

> the goal of punishment could arguably be satisfied by a shorter period of incarceration, this does not render the trial court's sentences unreasonable. The trial court was not required to sentence defendant to the lowest conceivable term that may satisfy the punishment goal for sentencing, particularly in light of all the other considerable factors in this case. [*People v Klungle*, ___ Mich App ___, ___; ___ NW3d ____ (2024) (Docket Nos. 364125 and 367795); slip op at 6.]

Accordingly, defendant is not entitled to resentencing.

Affirmed.

/s/ Sima G. Patel
/s/ Christopher M. Murray
/s/ Christopher P. Yates